RICHARDSON, Administrator, etc., v. McLEMORE.

1. BILLS AND NOTES.  *Release of co-obligor.*  If there has been a release
of an obligor in an instrument, it is a question of intention, under our
statute which has modified the strict rule of the common law, whether
the effect of such release is to discharge a co-obligor entirely or to
discharge him from the joint liability for his co-obligor's half of the
obligation; and of this intention the jury must judge under proper
instructions.

Code cited: Sec. 3789.

2. AFFIDAVIT OF JURORS.  *After verdict.*  If the charge of the court below be
sufficiently clear and not obscure or calculated to mislead the jury,
and no positive error of law appears, the revising court cannot set
aside a verdict based upon the affidavits of jurors after verdict, and·
in no case will the court submit itself to the guidance of the jury in
the construction of the charge.  The practice of permitting such affi-
davits of jurors reprobated.

Case cited: *Evans* v. *Pigg*, 3 Cold., 395.
Authority cited: 1 Par. Con., 25–27; Story Prom. Notes, 5425.

FROM WILLIAMSON.

Appeal from Circuit Court.  WM. P. MARTIN, J.

JESSE G. WALLACE for plaintiff.

BOND and T. W. TURLEY for defendant.

SNEED, J., delivered the opinion of the court.

The plaintiff as administrator *de bonis non* of the
estate of M. F. DeGraffenreid brought this action
against the defendant McLemore in the Circuit Court
of Williamson county on a promissory note executed
by the defendant McLemore and one W. F. DeGraf-
fenreid to Daniel *et al.*, former administrators, for

$1,000, dated 30th November, 1870, and due 25th December, 1871. The note was given for the lease of a plantation—jointly leased by the defendant McLemore and said W. F. DeGraffenreid for five years, at $1,000 a year, the note in controversy being the first of the five notes given for the lease and the first to mature. A few days after the maturity of this first note, the payee thereof, Daniel, being then the sole administrator, agreed to bargain and sell the plantation to the defendant McLemore for the sum of $19,000, upon condition that the co lessee, W. F. DeGraffenreid, would surrender his interest in the lease for the remainder of the term. The said co-lessee and obligor in the note, W. F. DeGraffenried, in his testimony, gives this account of the transaction: "I am one of the makers of the note filed in this case. I do not know what day my lease was surrendered, but know it was at the time of the sale to McLemore of the leasehold. W. M. Daniel came to me in the presence of McLemore, in the town of Franklin, and wanted me to consent to the sale of said property. . . . . I agreed to the sale, and asked the question, 'But what about our notes?' Daniel replied 'They shall never trouble you.' My understanding was that I was released from all liability, and so understanding, I agreed to allow the sale. McLemore did not offer any objection to this release of witness upon the $1,000 note at the time. Both he and Daniel seemed desirous that witness should relinquish the lease." The defendant McLemore testifies that in his negotiation with Daniel, the payee of the note for the purchase of the

land, Daniel remarked that he would have to release
DeGraffenried on the notes to induce him to consent
to the sale and to relinquish his lease. Whereupon
the witness replied: " I will not consent to release
DeGraffenreid. I am willing to pay my half of the
note, but you must look to him for his half." Daniel
then went with witness to DeGraffenreid, and Daniel
asked DeGraffenreid to relinquish his lease, to which
he consented on condition that he should be released
from liability on the notes. Daniel thereupon told
DeGraffenreid he should never be troubled about the
notes. The witness never consented to the release of
his co-obligor, but always told Daniel that he would
not consent, although he said nothing on the subject
at the time of the conversation with DeGraffenreid
referred to. The land had been offered to him at
$20,000, which he refused to give. He finally bought
it at $19,000, but the note of $1,000 was no part of
the purchase money, and the price of the land was
not changed on account of said note. The plaintiff's
attorney testified that after the interview between Dan-
iel, DeGraffenried, and the defendant McLemore, the
latter came with Daniel to his office to have the con-
tract of sale drawn, and that nothing was said about
the release of DeGraffenreid on the note. The wit-
ness never heard of defendant claiming a release upon
such ground until his pleas in this case were filed.
That after the suit was brought McLemore asked wit-
ness why DeGraffenreid was not sued on the note
with him, claiming that DeGraffenreid was also bound
on the note. The witness gave as his reason for not

embracing DeGraffenreid in the suit that the latter was in West Tennessee, or some such reason. McLemore did not at that time claim that he was released from liability on said note."

After the court had charged the jury, and they had retired to consider of their verdict, they came into court and asked the instruction of the court upon the following proposition: "If the jury shall find that the plaintiff released the joint obligor DeGraffenreid from the payment of the note, and that the defendant was present at the time, knew of the release and did not object or say anything, would that discharge the defendant?" The court upon this inquiry said to the jury: "If you find from the proof that the plaintiff released DeGraffenreid, the joint obligor, from the payment of the note, and the defendant was present and made no objection thereto, the defendant would not thereby be released. He should have made known his objection; but the fact of silence must be taken in connection with all the facts proven in the case before and after the release, tending to prove assent or dissent of the defendant, and which was known to the plaintiff and defendant to ascertain the purpose of the parties and their understanding."

It is insisted that the charge is erroneous, and that the jury were misled by it in finding a verdict for the plaintiff. Upon the application for a new trial seven of the jurors made affidavit that they were governed in arriving at their verdict by the first proposition of the said supplemental charge. The practice of permitting the introduction of the affidavits

of jurors after verdict as to their understanding and construction of the charge of the court has very often been reprobated. If the charge be sufficiently clear to be comprehended by men of ordinary understanding, if it be not involved in such confusion and obscurity that it is apparent a common jury of the country was misled by it, and no further error of law appears, a revising court cannot set aside a verdict based upon it, and in no case will it submit itself to the guidance of the jury in the construction of the charge. We cannot, therefore, consider these affidavits. In this case it is clear that if there was a release to the defendant's co-obligor, it was founded on a valid consideration, and it is a question of intention, under our law, whether the effect of it was to discharge him from the joint liability for his co-obligor's half of the obligation. The effect of the release did not depend upon the fact whether or not the defendant did or did not object to the release at the time it was given. It is an elementary principle of the common law that the release of one co-obligor by a party authorized to grant the release, based upon a valuable consideration, releases all the other obligors. 1 Par. Con., 25–27. And by the strict rule of the common law this was so whether the parties intended it or not. Story Prom. Notes, 5425; *Evans* v. *Pigg*, 3 Cold., 395. Our statute has, however, modified this doctrine, and provided that " releases shall have effect according to the intention of the parties. Code, sec. 3789. The question in such case would be not whether defendant consented to the release only, but

whether he consented thereto and agreed to continue bound; and if so, did he agree to be bound for the whole debt or only so much thereof as he was in conscience liable for, and the liability in either degree must be affirmatively shown by the party seeking to enforce it—either by the admissions of the defendant or by some action or course of conduct equivalent thereto. The charge, as a whole, is obscure, and calculated to mislead the jury, and is not a full exposition of the law as applied to the facts, because the court does not give the defendant the benefit of the question of intention as to the extent to which he agreed to be bound after the release of his co-obligor. The defendant and his co-obligor had jointly enjoyed the use and occupation of the land; and the co-obligor, so far as we are advised, had received his full share of the consideration of the note. The result fixes the whole amount upon the defendant, while it deprives him of all remeby by contribution against his co-obligor. If this was the intention of the parties it is all right, but the jury must judge of that under proper instructions.

Reverse the judgment.