George Bryson, Administrator, Appellee, v. Chicago, Burlington & Quincy Railway Company, Appellant.

89  677|
96  705|
89  677|
103 363|
103 416|
89  677|
122 221|
89  677|
d125  72|
d126  13|
89  677|
135 519|

1. **Railroads:** PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE: EVIDENCE. Where the right of a railroad company to the use and occupation of a city street is in common with that of the public, the public use is subservient to the rights of the railroad company as to the use of its tracks in the operation of its railway. Where, therefore, a person went upon a railway track on such a highway, to the rear of a train that was standing at the depot, and started to walk in the opposite direction from that in which the train was headed, without looking to see if there was a light on the rear end of the train, and without listening for the sounding of the bell or whistle, nor paying other attention to said train, because of the belief that it was going in the opposite direction, and she was presently struck by said train backing up, and killed, *held*, that, while she was not a trespasser, she was guilty of such contributory negligence as to preclude a recovery by her estate of the railroad company for causing her death.

2. ———: ———: ———: JUDGMENT NOTWITHSTANDING VERDICT. The jury having found specially that the whistle was blown and bell rung before the train commenced to back up, and that the bell continued to ring as the train was backing, and answered that they were in doubt as to whether the deceased was exercising ordinary care at the time of the accident, *held*, that the defendant was entitled to a verdict on the special findings.

3. **New Trial:** GROUNDS: COMPROMISE VERDICT. A showing that the verdict in a cause is the result of a compromise; that it is reported that one of the witnesses of the opposite party was paid for testifying as he did; and of newly discovered evidence which is merely cumulative, will not entitle a party to a new trial.

*Appeal from Pottawattamie District Court.*—Hon. H. E. Deemer, Judge.

SATURDAY, JANUARY 20, 1894.

Action to recover damages for a personal injury resulting in the death of Kate Bryson. There was a verdict for the plaintiff for one dollar. From orders overruling a motion to direct a verdict for the defendant, a motion for judgment for the defendant on the

special findings, and from a ruling granting the plaintiff a new trial, the defendant appeals.—*Reversed.*

*Wright & Baldwin,* for appellant.

No appearance for appellee.

KINNE, J.—By virtue of an ordinance of the city of Council Bluffs, the defendant company was on January 21, 1889, occupying most of Fourth street, from a point south of the south side of Twelfth avenue to and beyond Thirteenth avenue, with its tracks and yards, and in the proper operation of its railway. The grant by the city to the defendant company, as to Fourth street, was perpetual, for "the right of way for a double track railway, with the necessary sidetracks, turnouts and switches. * * * Said tracks, when constructed, to be located as near the center of said streets as may be practicable." The ordinance also granted to the defendant company the "exclusive use and occupancy" of Twelfth avenue from Fourth street for one block west. The passenger depot of the defendant was situated near the intersection of Fourth street and Twelfth avenue. As we understand the record, the accident occurred on Fourth street, below its intersection with Twelfth avenue. On the evening of January 21, 1889, the plaintiff's intestate, on her way home, passed the fast mail train of the defendant, which was standing at or near its passenger depot, and which was headed to the west. After passing said train, she stepped upon the track upon which it was standing, and in the rear of it, and had walked but a short distance upon said track when the train was backed, knocking her down, and so injuring her that she died as a result thereof. The particular acts of negligence charged against the defendant were: *First,* failure to have some one stationed at the rear end of said train; *second,* that no signal or warning was given for start-

ing said train by the person whose duty it was to do so; *third*, that no proper warning or signal of the starting or backing of the train was given; *fourth*, that after Kate Bryson was struck, and before she was seriously injured, her peril was discovered by the defendant's servants and employees in charge of the train, and in time to have avoided dangerous injury to her, and that said servants and employees negligently failed to stop the train, by reason whereof she received the injuries of which she died. It is also averred that deceased did not contribute to produce the injuries complained of. The defendant denied all the allegations of the answer. At the close of the plaintiff's testimony, the defendant filed a motion to direct a verdict for it on the ground that no negligence had been shown on part of the defendant, and because the evidence showed that the plaintiff's intestate was guilty of such negligence as to defeat a recovery, and that she was on the defendant's right of way as a trespasser. The motion was overruled. Certain special interrogations were submitted to the jury. They were instructed, and returned a verdict of one dollar for the plaintiff. The defendant filed a motion for judgment on the special findings, notwithstanding the general verdict, and the plaintiff filed a motion for a new trial. The court overruled the defendant's motion for judgment, and sustained the motion for a new trial. From the court's action in overruling the defendant's motion to direct a verdict, and its motion for judgment on the special findings, and from the ruling granting a new trial, the defendant appeals.

I. The appellant's first contention is that the plaintiff's intestate was a trespasser upon its tracks,

1. RAILROADS: personal injury: contributory negligence: evidence.

and this claim seems to be based upon the thought that the exclusive use of Fourth street at the place where the accident occurred was in the defendant

company. We do not so read the record. From the quotations already made from the ordinance in evidence, it will be observed that the exclusive use of Twelfth avenue for a block west of Fourth street was granted to the defendant, but it appears that the accident happened at a point south of Twelfth avenue. If so, it was on Fourth street, which the defendant simply had the right to occupy and use in common with the public; such public use, of course, being subservient to the rights of the defendant company as to the use of its tracks in the operation of its railway.

We have, then, the case of an injury to one walking upon the track of the defendant company, which was laid upon a public street in the city, when the right of use of the street had not been taken from the public, except in so far as such use was inconsistent with the defendant company's paramount right to use its tracks in the operation of its trains thereon. The following further facts were established by the evidence introduced by the plaintiff: That about 6 o'clock on the evening of January 21, 1889, the decedent, accompanied by her mother, Mrs. Lash, was returning to her home, from the business part of the city; that she went upon the platform of the defendant at or near its local passenger station in said city; that both ladies walked the entire length of the depot platform; that they then saw a train of cars standing at the depot. The train was the fast mail train, and an engine was attached to the west end thereof. When they had passed the train, they stepped off of the platform onto the track on which this train stood, and in the rear of it. They had proceeded but a short distance, when the train backed against the plaintiff's intestate, knocking her down, and running over her. She died from the injuries in about an hour. The ladies thought this train was going to the transfer depot of the Union Pacific Railway Company, because

it was headed that way. They talked about that being its destination. Mrs. Lash testifies that she did not look to see if there was a light on the rear end of the train, or if there was a man there; that neither of them paid much attention to the train, as they thought it was going to the transfer, and thought they were safe; that they did not listen for the ringing of the bell or the blowing of the whistle, and she did not hear either. It appears, without conflict, that there was a light on the rear end of the train. There is a conflict in the evidence as to whether the whistle was sounded and bell rung. Several witnesses testified to the fact that people had for a long time used the track in question as a footway, and had walked alongside of the track, with the knowledge of the defendant's employees.

We are first to consider whether, in view of this testimony, the plaintiff's intestate was guilty of such negligence as to defeat a recovery. If she was, then the defendant's motion for a verdict should have been sustained. Now, to be a trespasser, the decedent must have been on the defendant's track unlawfully, without its invitation, or consent. It is true she was not walking on the defendant's invitation, nor with its consent, except as it might be implied from the fact that the track had been so used with the knowledge of the defendant's employees. But she did not need the defendant's consent. She was walking upon a public highway, wherein the public and the defendant both had a right of use. Her right to thus occupy the track was only subordinate to the right of the defendant to use it for the operation of its trains. Surely, then, she was not a trespasser. She was there rightfully.

What, then, under such circumstances, was the measure of her duty? What care was she bound to exercise, and was she guilty of negligence which contributed to her injury? It can not be doubted that the plaintiff's intestate, though rightfully on the track, as a

part of the public highway, was bound to exercise ordinary care and prudence for her own safety. She knew she was walking on a railway track. She knew, or was bound to know, that a train might move over that track at any moment. She knew that the railway company had the better right, as against her, to occupy said track in the operation of its trains. She knew that there was a train standing upon the track behind her for she had just passed it. There is nothing to show that she was not in the full possession of her faculties. Still, she made no effort to know if the train moved. She paid no attention to it, not even listening for signals of danger. She was bound to know that in using a railway track as a footpath she was subjecting herself to great danger, and her situation required that she keep a vigilant watch for approaching trains. She did not do so. She assumed, without warrant therefor, that, as the train was headed towards the crossing it was safe to walk behind it, and pay no attention to it. It is a matter of common observation, of which every one is bound to take notice, that trains are likely to move either forward or backward. It is said in *Illinois Central Railway Co. v. Hall*, 72 Ill. 222: "It is negligence for a person to walk upon the track of a railroad, whether laid in the street or upon the open field, and he who deliberately does so will be presumed to assume the risks of the perils he may encounter. The crossing of a track of a railroad is a different thing. The one is unavoidable. But in the other case he voluntarily assumes to walk amid danger constantly imminent.  *  *  *  It was shown that trains passed frequently. No prudent man would expose himself on that part of the road without keeping a constant and vigilant watch for approaching trains. The appellee did not do this. *  *  *  If a party will not exercise ordinary care for his personal safety, he ought to bear the consequences that may ensue." This doctrine was approved by the court in *McAlister v. Burlington & N. W. R'y Co.*, 64

Iowa, 395, 398.   See, also, *Masser v. Chi., R. I. & P. R'y Co.*, 68 Iowa, 602; *Richards v. Chi., St. P. & K. C. R'y Co.*, 81 Iowa, 426, and cases cited.

In *Nixon v. Chi., R. I. & P. R'y Co.*, 84 Iowa, 331, 335, one attempted to cross the railway track at a crossing.   He looked for a train from the south, and was struck by a train coming from the north.   This court said:  "The traffic and running of trains on railroads is such that there can be no excuse for a traveler to coolly and calmly approach a railroad track, and look but one way."   It is apparent that, by the exercise of the slightest care by the plaintiff's intestate, she could have known of the approaching train, stepped off the track and prevented the accident.   She, then, having directly contributed to the accident, no recovery can be had by the plaintiff, even though the defendant may have been negligent.   There was no evidence which even tended to show that the defendant's servants in charge of the train knew of the decedent's presence on the track until after the injury was inflicted.   The court should have directed a verdict for the defendant.

II.   The jury, among other things, found, specially, that the whistle was blown before the train began to back up; that at and prior to the backing of the train the bell of the engine was ringing, and that it continued to ring as the train was backing; that when the train began backing there was a light on the rear end of it; that the plaintiff's intestate did not look to see if there was a light burning on the rear end of the train when it started to back towards her; that there was nothing to prevent her from seeing the light when the train stood at the platform as well as when it started to back; that there was nothing to obstruct her from seeing the train as it was backing down, if she had looked for the same; that she did not stop, look, or listen for the movements of the train.   On these special findings, the defendant moved for a judgment in its favor.

2. —: —: —:
judgment notwithstanding verdict.

The burden was on the plaintiff to show that his intestate was not guilty of negligence which contributed to the injury. Touching this matter, the following interrogatory was submitted: "Was plaintiff's intestate, Mrs. Bryson, exercising ordinary care and prudence for her own safety at the time she was struck by defendant's train?" which the jury answered, "In doubt, for want of evidence." Inasmuch as it was incumbent upon the plaintiff to establish the fact that his intestate did not in any way directly contribute to the injury, it is clear that if the plaintiff is to recover it must appear that his intestate was, at the time of the accident, exercising ordinary care for her own safety. The finding of the jury is, in effect, that the plaintiff has failed to establish this fact, which is essential to his recovery. It seems to us that the findings are absolutely inconsistent with the general verdict. These special findings not only show that the plaintiff's intestate was guilty of contributory negligence, but also tend strongly to show freedom from negligence on the defendant's part. The jury were properly told by the court that before they could find for the plaintiff they must find that his intestate did not, by want of ordinary care or prudence on her part, directly contribute to the injuries complained of. They did not so find, as is evident from their special findings. The plaintiff had failed, in an essential particular, to establish his case. The general verdict being in conflict with the facts specially found, it should have been set aside. *Baird v. Chi., R. I. & P. R'y Co.*, 55 Iowa, 121, 124; *Cooper v. McKee*, 53 Iowa, 239; *Ford v. Central Iowa R'y Co.*, 69 Iowa, 627.

III. The motion for a new trial should have been overruled. The alleged misconduct of the jury, in the

3. NEW TRIAL: grounds: compromise verdict.

manner in which they reached their verdict, it occurs to us, is as to a matter essentially inhering in the verdict itself.

The affidavits of jurors set out in the record consist of a statement showing why they reached the verdict they did. It is not a case of a quotient verdict, or one arrived at by lot, but, at most, a claim that the verdict was the result of a compromise of conflicting opinions. It is well settled that affidavits of jurors are not receivable to impeach a verdict, by showing the motives which influenced their decision, or that they were unduly influenced by their fellow jurors. *Darrance v. Preston*, 18 Iowa, 396; *Bingham v. Foster*, 37 Iowa, 339.

Another ground of this motion was misconduct of the defendant. One Fulton swears that Mooney told him that one O'Leary, a witness for the defendant, was paid for testifying as he did. It does not appear how Mooney knew this fact, if it was a fact; but it does appear, from Fulton's own affidavit, that when Mooney told this he was intoxicated. We do not think that that sort of a showing justified the granting of a new trial.

It is said, also, that the witness Mooney was mistaken when he testified that the whistle was blown before the train backed up; that he referred to some other occasion. Even if this is so, it would not be ground for a new trial. Three witnesses for the plaintiff testified they heard no whistle. One said it was blown, while four witnesses for the defendant, besides Mooney, swear it was blown, and the jury so found. If Mooney would swear that no whistle was blown, it would simply be cumulative evidence.

Another ground for the motion for a new trial is newly discovered evidence. This relates to the blowing of the whistle and ringing of the bell. As we have already said, five witnesses, besides Mooney, swear the whistle was blown and bell rung, and three to the contrary. The newly discovered evidence was all cumulative, and in such a case it is not ground for granting a new trial. *First Nat. Bank v. Charter Oak Ins. Co.*, 40

Iowa, 572; *Morrow v. Chi., R. I. & P. R'y Co.*, 61 Iowa, 487; *Donnelly v. Burkett*, 75 Iowa, 613.

We have considered all the questions raised, and, while we are never inclined to disturb the action of the court below in granting a new trial, yet the facts in this case require us to do so. Other matters appearing in the record, and which, to our minds, further justify the conclusion we have reached, need not be considered. For the errors pointed out, the judgment below is REVERSED.