STATE OF IOWA, Appellee, v. A. M. STEIDLEY, Appellant.

Criminal law: APPEAL: PRACTICE. Where an abstract of the record
1 has been filed in an appeal to the Supreme Court it will be
presumed, in criminal as well as civil cases, that the same con-
tains the entire record and that the transcript will only be
resorted to in cases of dispute.

Insanity: BEST EVIDENCE. The testimony of a witness in support
2 of a plea of insanity, that defendant's ancestor had been ad-
judged insane, is objectionable as not the best evidence.

Burglary: EVIDENCE: OTHER OFFENSES. The admission of evidence,
3 on a prosecution for burglary, intimating that defendant had
at another time been charged with the crime of larceny was
not prejudicial, where no attempt was made to follow it up
by proof of the facts, and the court told the jury that such
evidence could not be considered in proof of the offense
charged.

Intoxication as a defense: INSTRUCTION. On a prosecution for
4 burglary, where there was a defense of drunkenness, an in-
struction that if defendant was sober when he formed the
intention to break and enter the fact that he was intoxicated
at the time he committed the act would not avail him, was a
correct statement of the law and under the facts in the case
was properly given.

Burglary: POSSESSION OF STOLEN PROPERTY: PRESUMPTION. Where
5 the evidence is uncontradicted that defendant committed the
burglary charged, and that the property stolen was found in
his possession, the correctness of an instruction regarding the
presumption arising from the possession of the stolen prop-
erty is immaterial.

Instruction: RESISTING ARREST. Under the evidence a requested in-
6 struction respecting defendant's action in attempting to avoid
arrest, in the form presented, was properly refused.

Defendant as witness: INSTRUCTION. On a criminal prosecution
7 the defendant, in testifying in his own behalf, is an interested
witness and the jury may be instructed to consider this fact
in determining the weight to be given his testimony.

Misconduct in argument: The suggestion in argument by a county
8 attorney that he would be satisfied with a punishment less
than that prescribed for the crime charged, is held, in the

connection in which it was made, to have been without preju-
dice; especially as the court told the jury that the only ques-
tion for them to determine was that of defendant's guilt or
innocence, and that the question of punishment was exclusively
for the court.

**Misconduct of jurors.** Jurors are not permitted to impeach their
own verdict through the medium of affidavits, by saying that
had they understood a conviction would result in a peniten-
tiary sentence they would have returned a verdict of not guilty.

**Same.** Evidence reviewed and held insufficient to show miscon-
duct on the part of a juror.

**Arrest of judgment.** A motion in arrest of judgment which is not
based on any ground known to the statute should be over-
ruled.

*Appeal from Lee District Court.—* HON. H. BANK, Judge.

TUESDAY, OCTOBER 15, 1907.

THE defendant was charged by indictment with bur-
glary; that is, with breaking and entering a building be-
longing to one Nelson, in the night time, with intent to
commit larceny.   On trial he was convicted, and he appeals.
— *Affirmed.*

*Jones & Kendrick,* for appellant.

*H. W. Byers,* Attorney-General and *Charles W. Lyon,*
Assistant Attorney-General, for the State.

BISHOP, J.— The record in this case is in a very unsat-
isfactory condition.   The abstract filed by appellant, after
reciting the indictment and the organization of the trial
jury, starts out with the cross-examination of Henry Kessel-
ring, the sheriff of the county; the question and answers
having relation exclusively to the interest taken by him in
the prosecution of the case.   There was then called the
wife of defendant, who testified to her husband's long-con-
tinued ill health, to his appearance and actions when having

spells of pain in his head, and to his habit of using intoxi-
cating liquors in excessive quantities during the continuance
of such spells.  She also testified that, when the spells
" come on him, he would get wild,' hitch up his team, and
go out and often brought back things; " that she would ask
him where he got the things, and he would answer that he
did not know.   The daughter of defendant testified substan-
tially as did her mother.   Two sons of defendant were then
called, and each testified to having gone to Nelson's with
their father; that the father acted as though he was crazy;
that he had liquor with him and drank frequently while on
the road over; that he was drunk.   The defendant him-
self was then called, and testified to his ill health, especially
of trouble with his head, and of his habit of drinking
whisky when the pain was severe.   He said he had no recol-
lection of going to Nelson's.   The sheriff was then recalled,
and testified as follows:  " Q. State whether or not the
next morning in jail you asked him where he had hidden the
hay fork that he got at Sargeant's.   A. I did.   Q. State
whether or not you were in the office of Squire Landis here.
in Keokuk the next morning?   A. I was.   Q. Were you
present when the information was read to Steidley charging
him with petit larceny?   A. I was there.   Q. Tell the jury
where you got the large rope and pulley?   A. I found them
on Steidley's farm buried in the sand."   Each of the ques-
tions thus propounded were objected to as incompetent, im-
material, and irrelevant, and the objection overruled.   The
foregoing is the substance of all the evidence found in the
abstract; and it does not appear by whom that was brought
into the record save that it may be inferred that the sheriff,
when last on the stand, was called by the State, it appear-
ing that the objections were made by the defendant.   It may
be remarked in passing that the Attorney-General has brought
to our attention by an additional abstract certain other evi-
dence introduced at the trial on behalf of the State, and, as
far as necessary, we shall notice this farther on.

I.   Going now to the errors complained of, we find several assignments based on asserted rulings of the court in connection with the introduction of evidence, but respecting which not a word appears in the abstract.   It is true that in the course of the argument we are given occasional references to pages of the transcript; but in the presence of an abstract of the record, filed pursuant to the requirement of the statute, and of our rules, we will presume that such abstract contains the entire record, and we are not required to go to the transcript for any purpose other than to settle disputes.   And the rule applies in criminal, as well as in civil cases.   Code, sections 4118, 5461; Court Rules, sections 29, 31, 90; *Barnes v. District,* 51 Iowa, 700; *Van Rees v. Witzenburg,* 112 Iowa, 30; *State v. Smouse,* 49 Iowa, 634.

1. CRIMINAL LAW: appeal: practice.

II.   Respecting some of the rulings on evidence, the abstract makes disclosure of the questions, the objections, and the rulings.   Mrs. Steidley, having testified that she was acquainted with her husband's grandfather, was asked if he had ever been adjudged insane.   This was objected to as incompetent, immaterial, and not the best evidence, and the objection was sustained.   Assuming that the objection was on behalf of the State, it was properly sustained.   To say the least, it was not the best evidence.

2. INSANITY: best evidence.

Respecting the questions propounded to the sheriff — which we have set out above — it would seem that the matters inquired into were foreign to the issue being tried. This, of course, on the assumption that appellant's abstract sets forth all the evidence. But we think there was no prejudicial error. Conceding that by the questions it was insinuated that defendant had at some time stolen a hay fork and a rope and pulley, and that at some time he had been arrested charged with petit larceny, still there was no attempt to follow it up by proof of the facts.   And the court expressly

3. BURGLARY: evidence: other offenses.

told the jury in the course of the charge that evidence tending to show the commission of other offenses by the defendant could not be considered as tending in any degree to show the commission of the offense charged in the indictment.

III. The thirteenth instruction given the jury is complained of as error. It was there said, in substance, that if the defendant while sober and in his right mind had

4. INTOXICATION AS A DEFENSE: instruction.

formed an intention to break and enter the building described in the indictment, and it was found that he did break and enter, the fact that he was completely intoxicated at the time of entering would not avail him as a defense. Appellant does not question the law of the instruction, but says that it had no support in the evidence. We think otherwise. As we have seen, defendant himself testified that he was intoxicated on the night in question. Two of his sons had gone with him to the building — as they say, by his command — and their evidence, as brought out by the additional abstract, clearly tends to prove that defendant was sufficiently in his right mind when the expedition was started upon to comprehend the nature and character of his mission. One of them, after stating that he went with his father to the Nelson place, testified: " My brother Ed. was with me and stayed outside with a shotgun, and my father said to shoot up in the air if he saw anybody coming. My father said to hide the stolen property in case we were arrested."

IV. Instruction 22 is complained of. This instruction had relation to the presumption arising from finding the stolen property in the possession of defendant soon after

5. BURGLARY: possession of stolen property: presumption.

the commission of the alleged crime. We think the criticism of the instruction unmerited; but we shall not stop for discussion, in view of the fact that the evidence is all one way respecting the commission of the act of breaking and entering charged. And the defendant does not question but that the property taken was found in his possession. The defense solely relied

upon by him was want of mental capacity to form an intent.

V.   The defendant requested an instruction as follows: " There has been some evidence introduced, of the defendant's action when arrested in which he attempted to avoid

6. INSTRUCTION: resisting arrest.

arrest.   In considering the weight to be given this evidence, you will take into consideration whether or not defendant had been drinking intoxicating liquor just prior to his arrest, his intelligence, his mental capacity, and the manner of making the arrest, whether force or threats were used in making the arrest, the feeling existing between the persons making the arrest, and all the circumstances surrounding the arrest."   The only evidence on the subject found in the record is in the testimony of the sheriff as brought forward in the additional abstract.   The sheriff says:   " When I went to arrest the defendant [which was some days after the alleged breaking and entering], he had a gun in his hand, and I told him I wanted him, and he said the first man that comes near the wagon he was going to kill him, and I slipped around and got hold of the gun, and told him I wanted him and to consider himself under arrest, and he jerked the gun away from me."   This being all, there was no evidence on which to base an instruction in form as requested.   Moreover, the court covered the subject in proper terms in the instructions given on its own motion.   There was no error.

VI.   The defendant was a witness on his own behalf, and the court in the thirty-first instruction told the jury what matters were proper to be considered in giving weight to

7. DEFENDANT AS WITNESS: instruction.

his testimony.   In form the instruction given was not open to criticism.   It was substantially like that quoted and approved in State v. Sterrett, 71 Iowa, 386.

VII.   The jury found the defendant guilty of entering without breaking, with intent, etc.   After verdict, and before judgment, defendant moved for a new trial, and the grounds of such motion insisted upon on this appeal may be

grouped as follows: (1) Misconduct on the part of the
county attorney in argument; (2) misconduct
on the part of the jury as a body; (3) mis-
conduct on the part of an individual juror. The accusa-
tion against the county attorney is that he stated to the jury,
in substance, " that in the included offense the court could
send the defendant to jail if found guilty," and that he
was willing, in case of a conviction, that the defendant
should be given credit on his sentence of the four months
he had spent in jail awaiting trial. We agree that the mak-
ing of such remark in argument was not improper in view
of the connection in which the same was made. But, aside
from this, it is certain that the remark could have had no
bearing on the question of defendant's guilt or innocence.
Nor could it have been persuasive to the mind of a reason-
able man as an argument in favor of a verdict which the
evidence in the case did not warrant. The most that can
be said is that it amounted to a suggestion on the part of the
county attorney that the jury would have done its duty in
finding the defendant guilty of entering without a breaking.
Thus considered, it would seem certain that no prejudice
could have resulted to the defendant. Moreover, the court
in its charge set the matter right before the jury. They
were distinctly told that the only question submitted to them
was that of guilt or innocence; that the question of punish-
ment, if the defendant was found guilty, was exclusively
within the province of the court.

But it is contended that the jury did take the objec-
tionable remark into consideration, and that they were in-
fluenced thereby adversely to the defendant, notwithstanding
the instruction given by the court. And
herein is the misconduct of the jury as a body
complained of. In support of the contention, there is pre-
sented the affidavits of several of the jurors, to the effect
that the remarks of the county attorney were taken into con-
sideration by the jury; " that it was argued by some of the

8. MISCONDUCT IN ARGUMENT.

9. MISCONDUCT OF JURORS.

jurors that if the county attorney allowed defendant a credit of four months that a light sentence might not be improper; that, therefore, it was decided that they would all agree on the included offense; . . . that a majority of the jury have since learned that a penitentiary sentence can be inflicted; . . . and that, . . . had it been understood that would be the effect of a conviction under the included offense, we were of the opinion that the evidence was not sufficient to find said defendant guilty of a crime the punishment of which would be a penitentiary sentence." Now, to begin with, it is established doctrine that the affidavits of jurors cannot be received to impeach their verdict where the subject-matter referred to in such affidavits inheres in the verdict itself, as that the jurors did not assent to it, or that they misunderstood the instructions, or that they were unduly influenced or mistaken, etc. *Cowles v. Railway,* 32 Iowa, 515; *Ward v. Thompson,* 48 Iowa, 588; *Fox v. Eunderlich,* 64 Iowa, 187; *Bryson v. Railway,* 89 Iowa, 677. But, aside from this, the verdict ought not to be disturbed on any such showing. The affidavits make it plain that the jurors either misconceived their duty or willfully ignored the instructions given by the court. It cannot matter which. Whatever the fact, they all agreed that the defendant committed the offense named in their verdict, and we shall not assume that they intended in their affidavits to swear that, had they realized that for such offense the defendant might be sent to the penitentiary, they would have violated their oaths as jurors by shutting out the evidence from their eyes, and returned a verdict of not guilty.

The asserted misconduct on the part of an individual juror was also presented by affidavits. It is said that Charles Horner, the juror in question, during the deliberations of 10. SAME. the jury, declared that the defendant was a bad man; that "he stole some chickens from me." Horner denies this by affidavit, and several other members of the jury declare in like manner that no such

remark was made. Again, one Cady, a stranger to the case, made affidavit that as the jury passed from the box, after being instructed, to the jury room, he saw the sheriff in conversation with Horner, and overheard the former say: " You can't help but stick him." Horner and the sheriff each deny in affidavit that they were in conversation as asserted by Cady, and they specifically deny the statement as asserted by him. The court was warranted in its conclusion that no misconduct had been made to appear.

VIII. The motion for new trial having been overruled, the defendant filed a motion in arrest of judgment, 11. ARREST OF JUDGMENT. and this was overruled. As the motion was not based on any ground known to the statute, there was no error.

We conclude that the defendant was rightfully convicted; and the judgment is *affirmed*.