THE STATE OF IOWA v. FRANK DUDLEY, Appellant.

**Criminal law:** CONTINUANCE. Where it appears from the record that the time allowed defendant in which to prepare for trial was adequate for the full presentation of his defense, the court's discretion in refusing a continuance over the term for the purpose of preparing the case will not be disturbed on appeal.

**Rape:** EXAMINATION OF PROSECUTRIX: LEADING QUESTIONS. Reticence of a prosecutrix for rape in testifying to the details of the offense furnishes sufficient ground for permission to ask her leading questions.

**Evidence:** COMPLAINT OF PROSECUTRIX. Where it was apparent from the examination of prosecutrix that her statements concerning the offense had reference to defendant's intercourse with her, and none of the details were called for, evidence of such statements was not objectionable because not limited to a complaint.

Nor did the mere fact that it was subsequently made to appear that her statements were made in response to questions, rather than otherwise, require the court to exclude the same, in the absence of a motion to that effect.

Same: LAPSE OF TIME. The lapse of two months between the time of an alleged rape and the complaint of prosecutrix will not render evidence of the complaint inadmissible.

Same. It is the natural impulse of a female upon whom rape has been committed to make known her wrongs, and her voluntary statements concerning the offense are not deprived of their character as complaints simply by the fact that they were made in response to inquiries, but her statements so made are receivable in evidence in corroboration of her credibility. The evidence of complaint in the instant case is held admissible.

Same: PHYSICAL CONDITION OF PROSECUTRIX. Evidence of the physical condition of prosecutrix, although the result of an examination made some time after the alleged rape, is admissible.

Same: CORROBORATION. Evidence that another saw defendant in the room with prosecutrix shortly after the offense, and that prosecutrix was sitting on the bed with her clothing and hair in a disordered condition, together with plaintiff's admission of his presence, was sufficient corroboration.

Same: UNCHASTITY. The possession by prosecutrix of an unsigned and unaddressed letter, suggesting sexual intercourse at a time prior to the alleged offense, was inadmissible to show that she was unchaste.

Evidence: CORROBORATION. Refusal of the court to eliminate by an instruction the admission of defendant that he was at the house of prosecutrix at the time of the alleged offense and had his boots off, on the ground that it was not corroboration but merely evidence of opportunity, was proper.

New trial IMPEACHMENT OF VERDICT: AFFIDAVITS OF JURORS. Affidavits of jurors to the effect that they considered evidence of prosecutrix' complaint as tending to identify defendant as the person who committed the rape, in the face of an express instruction of the court not to do so, were properly stricken, for the reason that jurors are not thus permitted to impeach their own verdict, even though they may have misunderstood the instruction.

Same: MISCONDUCT OF JUROR. The mere fact that one of the jurors spoke to prosecutrix during the trial, simply passing the time of day, was not prejudicial to defendant.

**Same:** MISCONDUCT IN ARGUMENT. A defendant in a criminal action may rely on the presumption of his good character, which always obtains in the absence of evidence to the contrary, and remain silent on the subject; and where this is done and defendant offers no evidence of his good character, it is improper for counsel in argument to state that the law gives him the right to show his good character and that they have a right to infer that he would have done so if he could; and where, as in this case, the court overruled an objection to the argument it became especially objectionable.

**Same:** AMENDMENT TO MOTION OR PETITION: JURISDICTION. After entry of judgment and the taking of an appeal the trial court has no jurisdiction to hear either an amendment to a motion or a petition for new trial.

*Appeal from Guthrie District Court.*—HON. EDMUND NICHOLS, Judge.

TUESDAY, JUNE 14, 1910.

THE defendant was convicted of having committed rape, and appeals. *Reversed* and *remanded.*

*J. R. Mount and Weeks & Hughes,* for appellant.

*H. W. Byers,* Attorney-General, *Charles W. Lyon,* Assistant Attorney-General, and *Sayles & Taylor,* for the State.

LADD, J.—I. An indictment accusing defendant with having had sexual intercourse on May 28, 1909, with prosecutrix, a child under fifteen years of age, was returned

1. CRIMINAL LAW: continuance.

October 12, 1909. He was arraigned two days later, and given until the 19th to file a motion for continuance. The grounds of this motion were that neither he nor his attorneys would have time to prepare for the defense so as to go to trial before the next term of court, and that defendant's private affairs required attention. The motion was overruled and the cause assigned for trial October 27, 1909. This allowed

only fifteen days during a term of court in which to prepare for trial. But defendant was represented by several attorneys of ability and long experience, and the record of the trial indicates that the time was adequate and the defense fully presented, and it can not be said that substantial justice would have been more nearly obtained had a continuance been granted. The record before us does not indicate an abuse of discretion in overruling the motion.

II. After relating that she was fifteen years of age July 28, 1909, that her mother had been dead eight years, that she was living with her father on a farm, that on the 28th of May, 1909, shortly after nine o'clock a. m., while her father was away, defendant called, and, after ascertaining that her father was not at home, removed his boots and came into the house, that he immediately threw her on the bed, unfastened his and her clothes, and got on top of her, prosecutrix was asked, "What then did he do?" No answer being given, the court remarked that leading questions "in reference to this matter at this time" would be permitted. Thereupon a leading question as to what then occurred was propounded, and, over objection answered. Reticence in testifying to matters of this kind by witnesses in the situation of prosecutrix furnishes a sufficient ground for an exception to the rule against leading interrogatories. *State v. Burns,* 119 Iowa, 663; *State v. Peterson,* 110 Iowa, 647; *State v. Waters,* 132 Iowa, 481. There was no error in the ruling.

2. RAPE: examination of prosecutrix: leading questions.

Prosecutrix was asked whether she had told "about this to any one, and, if so, to whom," and, over objection, answered that she had informed one Bishop, a mail carrier, the next morning and a Mrs. Lilly on July 25th following. It is said the inquiry in form did not limit the answer to a complaint. By "this" manifestly was meant the act of intercourse, and,

3. EVIDENCE: complaint of prosecutrix.

as none of the details were called for, we think the criticism without foundation. Subsequently it developed that her statement to Bishop had been in response to questions and, as she said, was not voluntary. But this did not obviate the correctness of the ruling when made, and, in the absence of a motion to strike the answer, there was no error.

Nor can it be said that the length of time between the alleged offense and the statement to Mrs. Lilly was such as necessarily to require its exclusion. *State v.* 

**4. SAME: lapse of time.** *Bebb*, 125 Iowa, 494; *State v. Wheeler*, 116 Iowa, 212. The circumstance related by Mrs. Lilly of having met prosecutrix seven or eight times after the transaction in question and her alleged complaint, and that she had already informed the detective, robbed such complaint of any probative value, and warranted the court in excluding Mrs. Lilly's evidence concerning same, but this did not obviate the correctness of the ruling on objection to prosecutrix's testimony, though, had defendant thereafter moved to strike her statement that she told Mrs. Lilly, the motion should have been sustained.

III. Bishop was asked what prosecutrix said had happened, and, over objection as immaterial, incompetent, irrelevant, and hearsay, answered: "I asked her if it was her I heard crying the day before, and she 

**5. SAME.** said it was. I asked her what was the matter, and she said, 'That dirty thing.' I wanted to know what she meant, and she said: 'That nasty Frank Dudley.' I asked her what he had done, and she said he had done all he could. I asked what she meant and she said he did what he wanted to, and she was crying and talking on all the time she was telling me; had her arms on the gate post and her head on her arms, crying." It will be observed that the question was proper and the objection rightly overruled, even though the answer were otherwise and

no exception was taken to it. But the circumstance that her statements were in response to questions did not necessarily rob them of their character as complaints. *State v. Peres,* 27 Mont. 358, (71 Pac. 162); *Rex v. Osborne,* 74 L. J. K. B. 311. When an outrage is committed on a female, the instincts of her nature prompt her to make known her wrongs, and to seek sympathy and assistance. It is the natural expression of her feelings, and is received in evidence as tending to corroborate her credibility. *State v. Wheeler,* 116 Iowa, 212. Of course answers to questions involuntary in character are not to be regarded as complaints, but as mere recitals of what is claimed to have happened. *State v. Bebb,* 125 Iowa, 494; *State v. Pollard,* 174 Mo. 607, (74 S. W. 969); *Cunningham v. People,* 210 Ill. 410 (71 N. E. 389). But the prosecutrix was laboring under no compulsion, and her manner as disclosed by Bishop's testimony was such as to indicate that she was giving free expression to the indignity and wrong which had been done her. The court rightly received the evidence; the circumstances being for the jury's consideration in determining what weight should be given it.

IV. A physician testified to having examined prosecutrix two and one-half months after the alleged rape, and having found the hymen destroyed. The evidence was admissible. *State v. King,* 117 Iowa, 484; *State v. Teipner,* 36 Minn. 535, (32 N. W. 678); *Commonwealth v. Allen,* 135 Pa. 483, (19 Atl. 957). The length of time intervening may have impaired somewhat the probative value of the evidence, but did not require its exclusion. In the last-mentioned case evidence of an examination occurring a year and a half after the alleged commission of the offense was held to have been rightly received. Practically the only value of proof of condition so long afterwards is to show that the parts were not such as to disprove the charge.

6. SAME: physical condition of prosecutrix.

V. At the conclusion of the state's evidence, defend-

ant moved that the jury be directed to acquit on the ground
that there was no corroborating evidence tending to connect
him with the commission of the offense.

**7. SAME:** *corroboration.*  The father of prosecutrix testified that, upon
returning between nine and ten o'clock of the morning in
question, he stepped to the door of his house to tell his
daughter to hand him tobacco, when he observed defendant
sitting therein looking at a picture and the daughter sitting
on the edge of a bed with clothes "ruffled up," and her
hair down over her face and eyes. Surely this evidence,
if believed, tended to single defendant out as the perpe-
trator of the offense and the credibility of the witness,
even though convicted of a felony, was for the jury. We
are the more inclined to this view because of defendant's
admission that he was in the house at the time without his
boots, having left them at the door upon entering.

VI. Defendant offered to show that prosecutrix had
in her possession in the spring of 1908, prior to the alleged
rape, a note saying the writer would meet her "to-night"
and have intercourse with her. On objec-

**8. SAME:** *unchastity.*  tion, the evidence was excluded as immaterial
and incompetent. That the mere possession of such a paper
addressed to no one and unsigned did not tend to show that
she had indulged in sexual intercourse is too evident for
discussion. Possibly it might tend to prove an unchaste
mind, but no inference of the commission of the act could
properly have been inferred therefrom. For this reason
*State v. Bebb*, 125 Iowa, 494, and *State v. Height*, 117
Iowa, 650, are not in point.

VII. Complaint is made of the court's refusal of
an instruction to the effect that the testimony of prose-
cutrix's father was the only evidence other than hers
tending to connect defendant with the com-

**9. EVIDENCE:** *corroboration.*  mission of the offense. This was not error.
The circumstance that defendant admitted that he was in
the house with his boots off might well have been considered

in connection with the testimony of her father. It was indicative of undue familiarity.

VIII. The court instructed the jury that: "Some evidence has been offered on the trial that subsequently to the day of the alleged rape that the prosecuting witness, Retta Coons, made complaint to one Bishop; and there is also some testimony with reference to the condition of the hymen at an examination made some time after the alleged rape. This testimony is admitted and may be considered by you as corroborative simply of the statements of the prosecuting witness with reference to the crime of rape having been committed upon her. The complaint, if any, and the evidence as to the genital organs having been injured, is not to be considered by you as tending to point out the person who committed the offense." The contention that no such complaint had been made has been disposed of. The instruction is set out in order to show how pointedly the jury were told not to consider the evidence of complaint as tendering to point out the person who committed the offense. And yet in the face of this instruction eleven of the jurors made affidavits that they had considered Bishop's testimony as tending to connect the defendant with the commission of the offense. This does not obviate the correctness of the instruction which clearly advised to the contrary. These affidavits were stricken from the files, and rightly so. Jurors can not be permitted to thus stultify themselves, and thereby impeach their own solemn findings. That the jury misunderstood the instructions if correct furnishes no ground for new trial. In *Brown Land Co. v. Lehman,* 134 Iowa, 712, evidence had been erroneously admitted, a motion to strike overruled, and it had been commented on by counsel in their argument to the jury, and, although the court had withdrawn the issues upon which the evidence was received, the affidavits of the jurors were admitted as showing that

10. NEW TRIAL: impeachment of verdict: affidavits of jurors.

they had considered the evidence in reaching the verdict. The evidence was still before the jury, though improperly and it was thought the case was analogous with one where improper matters had been brought to the attention of the jurors, as in *Douglass v. Agne,* 125 Iowa, 67. The distinction between such cases and those wherein the affidavit is of a matter inhering in the verdict is pointed out in the last case. Affidavits of jurors that they have been unduly influenced by their fellows, or of the reasons for assenting to the verdict, or of improper arguments resorted to in the jury room, or that they did not assent to the verdict, or that it was not the result of their deliberate judgment, or they did not understand the instructions of the court as these matters inhere in the verdict, are incompetent, and can not be received to impeach the jury's findings. *Cowles v. Railway,* 32 Iowa, 515; *Garretty v. Brazell,* 34 Iowa, 100; *Ward v. Thompson,* 48 Iowa, 588; *Fox v. Wunderlich,* 64 Iowa, 187; *Bryson v. Railway,* 89 Iowa, 677; *State v. Steidley,* 135 Iowa, 512; *State v. Dickson,* 6 Kan. 209. Directly in point are *Davenport v. Cummings,* 15 Iowa, 219, and *Christ v. Webster City,* 105 Iowa, 119. And the rule with reference to misunderstanding instructions prevails elsewhere. *Smith v. Eams,* 3 Scam. (Ill.) 76, (36 Am. Dec. 515); *Baker v. Sherman,* 71 Vt. 439, (46 Atl. 57); *Schultz v. Catlin,* 78 Wis. 611, (47 N. W. 946); *Richardson v. McLemore,* 64 Tenn. 586; *Inhabitants of Bridgewater v. Inhabitants of Plymouth,* 97 Mass. 382; *Handy v. Insurance Co.,* 1 R. I. 400. Jurors after having agreed to a verdict cannot, in order to have it set aside, explain by affidavit the ground or train of reasoning by which they arrived at the result. Should affidavits of this character be entertained, few verdicts would stand, as some jurors would be found in most cases who would allege as mistakes of law or fact what were really afterthoughts suggested by the defeated party or his counsel.

IX. One of the jurors spoke to prosecutrix during

the trial, but had no conversation with her further than passing the time of day. Though there was no occasion for what the juror did as he had not known her save at the trial, the incident was without prejudice.

11. SAME: misconduct of juror.

X. In the course of his closing argument to the jury, E. R. Sayles, who was assisting the county attorney, said:

I do not think I invade or overstep the bounds of propriety in arguing this case in suggesting to you this fact, that the law gives the defendant in a criminal case a right to show his good character especially with reference to the particular quality of character which is involved in the charge made against him. For instance, in this case it would be proper for the defendant to show by the testimony of his friends and neighbors in the community in which he resides, prior to the commission of this offense, that he was a man of good moral character, and particularly to his treatment of women, especially with reference to his respect for the chastity and rights of women. And I ask you, gentlemen, if there is a syllable of evidence offered by the defendant in this case to show to you that this man ought not to be supposed to have committed this crime, ought not to be found guilty of it because he had hitherto, and prior to the commission of this offense, borne a reputation for good moral character in the community in which he resided. I say, gentlemen, he having the right and having learned counsel at his command and employed for his defense, if it would have been possible to have shown it, we have a right to infer that they would have done it.

12. SAME: misconduct in argument.

To this statement of counsel defendant objected, as follows: "Defendant objects to the statement of counsel for the state that the jury would have a right to infer that if the defendant could have produced evidence of his good character that he would have done so in this case, as being improper and getting outside the record, and not properly a matter in reply to argument made by counsel for the

defendant." The objection was overruled. The evident purport of the argument was that, because of defendant's omission to prove his character good, the jury might infer it to have been bad. He had the right to rely on the presumption of good character which always obtains in the absence of evidence to the contrary, and remain silent, and the jury had no right to take into consideration his omission to call witnesses in support of his character, and weigh it against him in any manner to establish his guilt. *State v. Kabrich,* 39 Iowa, 277; *State v. Dockstader,* 42 Iowa, 436. In these decisions, instructions to the contrary were denounced as, erroneous. The argument of counsel with the ruling of the court was quite as effective as an instruction, and the jury might well have inferred therefrom that such omission was proper matter for their consideration. Of what value is the privilege of every person accused of crime to put his character in issue or not as he shall choose if it can thus be frittered away by inference often more effectual than any adverse testimony which might be adduced? None, and so the courts with apparent unanimity have denounced argument of this kind as constituting prejudicial error. *People v. Evans,* 72 Mich. 367 (40 N. W. 473); *Fletcher v. State,* 49 Ind. 124 (19 Am. Rep. 673); *State v. Hull,* 18 R. I. 207, (26 Atl. 191, 20 L. R. A. 609); *State v. Upham,* 38 Me. 261; *Stephens v. State,* 20 Tex. App. 255; 1 Bish. Crim. Proc. sec. 1119; *Bennett v. State,* 86 Ga. 401, 12 S. E. 806, 12 L. R. A. 449, 22 Am. St. Rep. 465). The Attorney-General suggests that the portion of the address quoted was in response to such an argument by counsel for the defendant, but it does not purport to be, and the record which must be assumed to be complete does not so indicate. We are united in the opinion that what was said was beyond the pale of fair argument, and in connection with the court's ruling put that in issue which under the law could only

be injected in the case by defendant's election—his character prior to the alleged offense.

XI.   After judgment had been entered and an appeal to this court perfected, an amendment to the motion for new trial was filed, and also a petition for new trial.   On hearing both were overruled and rightly so, for the trial court was without authority to entertain either.   *State v. Bixby,* 39 Iowa, 465; *State v. Hayden,* 131 Iowa, 1.

13. SAME:amend-
ment to mo-
tion or peti-
tion: juris-
diction.

Because of error pointed out, the judgment is reversed and the cause *remanded.*