No. 20,200.

THE PITTMAN & HARRISON COMPANY, *Appellant,* v. EUGENE
R. HAYES, doing business as The Hayes Produce Company,
*Appellee.*

### SYLLABUS BY THE COURT.

1. PLEADINGS—*Amendments—Judicial Discretion.*   Rule followed that the
allowance of belated amendments to pleadings is within the sound dis-
cretion of the trial court.

2. TRIAL—*Immaterial Instructions.*   A case will not be reversed on ex-
ceptions to instructions which do not relate to the issue upon which the
cause was determined.

3. SALE—*Corn—Breach of Contract—Compromise and Settlement.*   In an
action for damages for breach of contract, a compromise and settle-
ment was pleaded and proved and the jury so found.    In such case,
the accuracy of instructions touching other defenses also pleaded need
not be considered on appeal.

4. NEW TRIAL — *Corruption of Prevailing Party — Question of Fact.*
Whether the corruption of the prevailing party (Civ. Code, § 305, sub-
div. 6) by giving perjured testimony in an unrelated and superfluous
defense can be said to have been instrumental in procuring a verdict
on the principal and successful defense, is a question of fact and not
of law, and the district court's determination thereon is ordinarily
conclusive.

5. SAME.   In support of a motion for a new trial under subdivision 6 of
section 305 of the civil code, which relates to corruption of the prevail-
ing party, the defeated party introduced evidence tending strongly to
show that the witnesses whose testimony established the first and suc-
cessful defense to an action for damages committed perjury in their
evidence to prove a second and unrelated defense; *held,* that while the
district court with much propriety might have granted a new trial on
such showing, it can not be ordered by the supreme court.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed June 10, 1916. Affirmed.

*W. H. Cowles*, of Topeka, for the appellant.

*D. H. Brannaman*, of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The petition in this action alleged that in October, 1911, the plaintiff, Pittman & Harrison Company, a Texas corporation, entered into a contract to purchase seed corn from the defendant, to be shipped from Topeka to Sherman, Tex., in December, 1911, to supply the plaintiff's seed trade for the following spring. The contract provided for one carload of "Squaw" corn (720 bushels), at $1.25 per bushel; 500 bushels of "Bloody Butcher" corn at $1.25 per bushel; and 700 bushels of "Calico" corn at $1.10 per bushel. The agreement also provided that the plaintiff should furnish sacks for use in shipping the corn and that an allowance should be made by defendant therefor. The plaintiff furnished the sacks and these were never returned. Neither did the defendant fulfill his contract; but in January, 1912, he shipped to plaintiff 60 bushels of "Squaw" corn, 60 bushels of "Bloody Butcher" corn and 182 bushels of "Calico" corn, for which plaintiff paid him the agreed price per bushel. Defendant repeatedly promised to forward the remainder, but he never did; and plaintiff alleged damages for which it prayed judgment.

The contract was one of integration, composed of letters and telegrams between the parties.

Defendant answered pleading a compromise and settlement between the parties on account of unfavorable crop conditions which had made it impossible for him to comply with his contract. The answer in part reads:

"And as a final compromise and in full satisfaction thereof it was agreed that said defendant would ship said plaintiff all the seed corn he then had of the varieties set forth in said correspondence, and that in addition thereto he was to furnish enough more produce of other varieties such as popcorn, cane seed, etc., to make up the balance of a car load. That he did this, as per said agreement, shipped the same to said plaintiffs and that they accepted and received the same as a full compromise and settlement of all matters that existed between them and in lieu of the different varieties of seed corn mentioned in said correspondence."

The answer also pleaded a custom among seed dealers well known to the trade that their contracts for seed delivery were not absolute but dependent on crop conditions; and it further alleged that on the letterheads of the defendant was a printed recital to wit:

"While we exercise the greatest care to have all seeds, plants and bulbs pure and reliable, we sell none with warranty, express or implied, in any respect, and will not in any way be responsible for the crop. All contracts made by us are subject to crop conditions and prices subject to change and further confirmation. If purchaser does not accept seeds on these terms they must be returned at once."

It was also pleaded that the contract was subject to the terms of this recital, and that owing to poor crops and weather conditions in the country around Topeka, where he expected to procure the seed to fill plaintiff's order, no seed of suitable quality was raised.

The jury returned a verdict for plaintiff for $24.72, which was the value of the sacks furnished by plaintiff and which defendant had not returned—defendant having pleaded his willingness to confess judgment thereon.

A special question was submitted and answered by the jury:

"1. At the time of the conversation between the defendant and O'Bannon, the president of the plaintiff corporation, in Topeka, in December, 1911, was it understood and agreed between the parties that defendant should ship plaintiff the seed corn he then had and in addition certain other products, and was it understood and agreed that this should be a settlement and adjustment of the claims and demands of plaintiff under its existing contract or contracts, and was this car so received and accepted by plaintiff in such settlement? State facts. Ans. Yes; and it was agreed that the seed corn he had on hand with whatever additional corn fit for seed he would be able to procure should be accepted in full settlement, and same was so received by plaintiff."

The plaintiff appeals.

1. The first error urged relates to the allowance of an amendment to defendant's answer in the midst of the trial setting up the recital in defendant's letterheads quoted above. Unless there is a clear case of abuse of discretion, the allowance of belated amendments is seldom considered so prejudicial as to require a reversal. (*Bank v. Badders,* 96 Kan. 533, 536, 152 Pac. 651.) Furthermore, the special finding of the jury shows a full compromise and settlement of plaintiff's

claims against defendant, so it can be of no consequence that this belated and superfluous defense was permitted.

2. The same reasoning disposes of the complaint that irrelevant testimony was introduced over objection on the question whether the seed corn which defendant was to furnish was to be from crops raised near Topeka or whether the contract was an absolute bargain to furnish the seed corn, and intended to bind the defendant regardless of local crop conditions.

3. So, too, the objection to the instruction relating to the custom of seed dealers that all their contracts were subject to crop conditions. In view of the compromise and settlement, the correctness of the instruction as to the custom and also the one pertaining to the measure of damages were immaterial.

4. The only serious point in this appeal is the error assigned in overruling plaintiff's motion for a new trial. The ground assigned was based on subdivision 6 of section 305 of the civil code, which reads:

"That the verdict, report or decision was procured by the corruption of the party obtaining it. In this case the new trial shall be granted as matter of right; and all the costs made in the case up to the time of granting the new trial shall be charged to the party obtaining the decision, report or verdict."

This is a new provision of the code prescribing statutory grounds for a new trial, but it is practically a reiteration of subdivisions 1 and 2 of section 306 of the old code (Gen. Stat. 1901, § 4754). They read:

"First, Irregularity in the proceedings of the . . . prevailing party . . . by which the [defeated] party was prevented from having a fair trial.

"Second, Misconduct of the . . . prevailing party."

The corruption of the prevailing party consisted of the alleged perjured testimony of defendant and his wife, who swore that the correspondence constituting the contract, and which had been lost, was on defendant's stationery which contained the recital of nonliability under adverse crop conditions. The showing made in support of the motion for a new trial impels us to say that it did not contain anything of the sort. The plaintiff had no opportunity to procure sufficient

evidence to show conclusively the falsity of such testimony because the amendment alleging that recital was made during the trial. Some evidence to that effect was hastily collected and introduced. On the motion for the new trial, however, plaintiff produced successive series of the defendant's stationery under later dates, and showed beyond cavil that this defense was untrue, and that the stationery containing that recital was not printed until long after this contract for seed corn was made.

But the case did not turn on that issue. It turned on the fact of the compromise and settlement. The compromise and settlement were denied by plaintiff and proved by defendant and defendant's wife. Having shown that defendant and his wife committed perjury on one line of defense, plaintiff argues that the trial court should have concluded that the other—the successful—defense was likewise procured by their perjured testimony. Maybe it should. Maybe if one of us had been the presiding judge, we would have so determined. But unless we can say that it was plainly and palpably erroneous for the trial court to decide otherwise, its conclusion must stand. We only have this case in cold type. We have not seen the witnesses. Perhaps the testimony of the defendant and his wife as to the first defense was true. Perhaps the plaintiff's testimony as to the first defense was false. Perhaps the defendant in his weakness framed up the second defense through perjury to meet the plaintiff's perjured testimony on the first defense. We discuss these matters bluntly, and with no purpose of reflecting on either party, but only to point out how impossible it is for an appellate court, which must gather its facts from the printed page, to substitute its judgment for that of the district court which gathers its facts from the lips of living witnesses. And thus it is that month by month and year by year, in this court and in other courts of appeal, the elementary rule has to be restated that the decision of the trial court on matters of fact based upon substantial though conflicting testimony can not be disturbed.

That newly discovered testimony tending however strongly to impeach and discredit the witnesses of the prevailing party is not ground for our interference with the trial court's ruling

on a motion for a new trial, whether that ruling was the granting or refusing thereof, has often been decided.

In *Taylor v. Thomas*, 17 Kan. 598, a showing was made that if a new trial were granted two or three witnesses would be produced to disprove the testimony of a witness at the first trial. A new trial was denied.

In *Parker v. Bates*, 29 Kan. 597, a new trial was refused notwithstanding a strong showing that the testimony of a material witness in the first trial was not true.

In *The State v. Smith*, 35 Kan. 618, 11 Pac. 908, the second paragraph of the syllabus reads:

"As a general rule, newly discovered evidence the purpose of which is to discredit a witness in the original trial, does not afford adequate ground for the granting of a new trial."

(*Boyd v. Sanford*, 14 Kan. 280; *Taylor v. Thomas*, 17 Kan. 598; *Clark v. Norman*, 24 Kan. 515; *Manwell v. Turner*, 25 Kan. 426; *The State v. Kearley*, 26 Kan. 77; *Sexton v. Lamb*, 27 Kan. 432; *Parker v. Bates*, 29 Kan. 597; *Lee v. Bermingham*, 39 Kan. 320, 18 Pac. 218.)

In *Lee v. Bermingham*, supra, it was said:

"A new trial will not be granted on the ground of newly-discovered evidence, when the testimony proffered is for the purpose of impeachment merely. (*Parker v. Bates*, 29 Kan. 597.)" (Syl. ¶ 3.)

To the same general effect was *Bryson v. Chi., B. & Q. R'y Co.*, 89 Iowa, 677, 685, 57 N. W. 430.

In our investigation of this subject we have found some cases to the contrary, but those quoted stated the prevailing rule.

We concede that the instant case is one where with much propriety the district court might have granted a new trial; but in view of the precedents just quoted and the general principle that the trial court's determination of the facts can not be disturbed merely because the appellate court might have arrived at a different conclusion upon those facts (*Perkins v. Accident Association*, 96 Kan. 553, 555, 152 Pac. 786), it must be held that no such error appears here as would warrant a reversal of this case.

The judgment is affirmed.