STATE OF IOWA, Appellee, v. OTTO VOCHOSKI et al., Appellants.

RAPE: Assault with Intent—Corroboration—Sufficiency. Evidence
1   reviewed and held to show sufficient corroboration to sustain conviction for assault with intent to commit rape.

RAPE. Evidence reviewed and held sufficient to sustain conviction
2   for assault with intent to commit rape.

RAPE: Complaint—Delay—Effect. Delay in making complaint of a
3   rape goes to its probative force under the surrounding circumstances, and not to its admissibility.

RAPE: Issues—Included Offenses. The evidence being sufficient
4   to sustain a conviction for rape, it was, under the evidence in instant case, proper to submit the included offense of assault with intent to commit rape.

RAPE: Issues—Included Offenses. The submission of included of-
5   fenses, which might have been omitted, can seldom be prejudicial to defendant.

RAPE: Evidence—Corroboration—Province of Court and Jury
6   Stated. It is the province of the court to determine whether the record contains corroborating evidence,—the province of the jury to pass thereon. The court necessarily finds there is corroboration, in submitting the issues to the jury.

**RAPE:** Instructions—Prosecutrix's Story. An instruction in effect
7  requiring the state to sustain the entire story of prosecutrix
   in order to justify a conviction was without prejudice to de-
   fendant.

**CRIMINAL LAW:** Trial—Misconduct of Prosecutor—Sufficiency of
8  Showing. Misconduct of the prosecutor in argument must be
   made to appear. The court will not presume it.

> PRINCIPLE APPLIED: During argument, controversy arose
> as to what the county attorney had in fact said to the jury.
> The court made no finding as to what was said. The court stated
> that he would state the law to the jury in his instructions. The
> matter seems to have been overlooked. No effort to complete
> the record for review was made. The counsel objecting did not
> farther complain, except that in motion for new trial he farther
> insisted on what he claimed the county attorney had said. *Held,*
> the record presented nothing for review on the matter of mis-
> conduct in argument.

*Appeal from Jones District Court.*—HON. F. O. ELLISON,
Judge.

SATURDAY, DECEMBER 19, 1914.

REHEARING DENIED TUESDAY, MAY 11, 1915.

PROSECUTION for rape. There was a verdict of guilty of
assault with intent to commit rape against both defendants.
Judgment was entered accordingly and sentence imposed.
Both defendants appeal.—*Affirmed.*

*Jamison, Smyth & Hann* and *Clifford Paul,* for appel-
lants.

*George Cosson,* Attorney General, and *George C. Gorman,*
County Attorney, for appellee.

EVANS, J.—Eliza Leslie, the prosecuting witness, testified
in part as follows:

"I live at Oxford Mills. I have lived there about three
years. Before coming to Oxford Mills I lived five miles west.

Lived on a farm with my folks. I was raised on a farm. I am sixteen years old. Am acquainted with Leon Carroll and Otto Vochoski. Have known Carroll ten years and Vochoski five. September 8, 1912, I was at Benhart's. Benharts live about four miles west of Oxford Mills. I had been there about three weeks. Had been working for Benharts off and on for three years. I didn't live at home with my father and mother. I lived at my brother's, Dick Leslie. When not working at Benharts I stayed with my brother.''

Q. "Now, Miss Leslie, you may state whether or not you had a 'phone call from anyone on September 8th, Sunday. If so, state what there was to that."

A. "Mr. Carroll was the one that called me up. Mrs. Benhart answered the 'phone and he asked for me and I asked who it was, and he said Otto Vochoski, and I said 'Otto Vochoski,' I couldn't tell by the voice. He said 'You know who I am.' I thought it was Bert Jeffries. I didn't say anything in reply as to whether it was Jeffries or not. I am acquainted with Jeffries. We had the following conversation: He asked if I had company for that night, I told him no. He asked if he could come out. I said he could. It was about 7 o'clock. About a quarter to eight after that, Carroll came. He rapped at the door and the dog barked and he said 'Will the dog bite?' Mrs. Benhart said 'no,' so I went to the door. I said Mr. Jeffries called me up, and he said it was him that called me up, and he asked me to go buggy riding with him and I told him I would. Mr. and Mrs. Benhart were in the house at the time. We went to the buggy. I didn't put a hat on. He had a horse and buggy standing out in front of the house. We went through the entrance of the gate out to where the buggy was, got into the buggy and drove north about a half a mile. The road runs north and south past Benhart's place. Then turned around and came back past Benhart's house. No one came to the house with him at that time and no one went away with him. When we went past Benhart's house, we went on south. The road runs south and east of

Benhart's house about a quarter of a mile. We passed an orchard going south and there is a field on the other side. As you go south on the road it is down hill. There is a cut in the hill, the road is dug out and there is a hedge fence along the side of the road, osage orange hedge. When we got down to the bottom of the hill, there is a bridge there. There is no house near it. I went over described road with Carroll. When we came down to the bottom, most a half mile, there is a kind of a valley there and a bridge there. When we came down to the bridge Vochoski came out, one of the defendants in this suit. He came and said 'I have got you.' Mr. Carroll jumped out of the buggy and said 'what are you doing here' and struck at him. They stopped the horse, they did not fight, they struck at one another and smiled. Vochoski stepped into the buggy with me. He commenced saying he was going to tell my folks I was with Leon Carroll. I said I didn't care, I was going to tell them myself."

Q. "What did he do?"

A. "He pushed me over and took me around the neck with his arms and commenced to tell me I would have to let him have intercourse with me. Then I begged Carroll not to let Vochoski do it, and he said he wouldn't do it."

Q. "What did Carroll do, if anything?"

A. "He pushed me over and held my hands. Vochoski held one and Leon the other while Leon unpinned the cloth I had on. They took the cloth off, unpinned it. I could not move my hands. I hollered and cried."

A. "They told me to shut up or they would shut me up. Vochoski took hold and raised my clothes and Leon Carroll unbuttoned my clothes. Vochoski got onto me in the buggy and he had intercourse with me and he penetrated my person."

Q. "After he had done this, did Carroll do anything to you?"

A. "He did the same as Vochoski."

Both defendants were witnesses on the trial. The telephone call and the ride pursuant thereto were conceded by Carroll. He denied, however, that he gave any other name than his own in the telephone call. He also denied the alleged assault. The presence of Vochoski was denied by both defendants.

At the close of the State's evidence, there was a motion by the defendant Vochoski for a directed verdict on the grounds that the evidence was insufficient to connect him with

1. RAPE: assault with intent: corroboration: sufficiency

the alleged offense and because there was no corroborating evidence. This motion was not renewed at the close of all the evidence. However, the same contention is urged on this appeal. It is first urged for the defendant Vochoski that there was no corroborating evidence as to him.

There was evidence other than that of the prosecutrix which, if believed by the jury, would establish the following facts: That Carroll called on the prosecutrix with horse and buggy at about 7 :45; that this was pursuant to the telephone call at about seven o'clock; that Vochoski was with Carroll at the time of the telephone call and heard what he said; that the telephone call purported to be in the name of Vochoski; that Vochoski and Carroll were riding together in Carroll's buggy shortly before Carroll started for the Benhart home; that Carroll left the prosecutrix at the Benhart home about 10 :00 P. M.; that Vochoski and Carroll were together at the neighboring village four miles distant at 11 :00 P. M. and that they rode home together in the same buggy; that prior to the assault and on the same afternoon or evening, Vochoski told witness Engle that he had a "date" for that evening with the prosecutrix; that after the event and after his arrest therefor, he made statements admitting his presence at the place of the alleged assault. That the foregoing was sufficient to go to the jury on the question of corroboration is too clear for discussion.

II. It is urged for both defendants that the testimony was

insufficient to convict. The argument is that the story told by the prosecuting witness is too improbable, if not impossible, to be credible. The story is a revolting one.

2. RAPE.

In a sense, a revolting crime is always incredible, especially to those who would be morally incapable of it themselves. In that sense only is the story of the prosecutrix necessarily incredible. Of course, it should be scrutinized with searching care and the jury was so instructed. But the revolting character of the crime must not be permitted of itself to operate as an impeachment of the story of the injured party. The story of the prosecutrix is full of consistent details which would not lend themselves readily to a complete fabrication. A few evenings prior to the night in question, Vochoski had taken the prosecutrix out buggy riding and had attempted indecent liberties with her, because of which she left his buggy. Carroll had not previously kept company with her and does not appear to have taken her out riding before. It being once found that Vochoski was at the place of the alleged assault by previous understanding with Carroll, such fact would naturally give rise to very unfavorable inferences quite consistent with the story of the prosecutrix.

III. The prosecutrix was sixteen years old and was a domestic in the Benhart family. The alleged offense was committed on Sunday evening. When she returned home, the family had retired. She did not, on the following day, make any complaint to the Benharts. She did appear to be in distress and was observed to be crying. On Tuesday, she went to the home of her brother, five miles distant, and made the complaint to her sister-in-law. In such complaint she accused the defendants of having ravished her. Such complaint was put in evidence. It is contended for the defendants that it was improperly received because of its delay and because it was merely hearsay and especially so as to the naming of the defendants therein. The complaint was clearly admissible, notwithstanding the lapse of time before it was made. The

3. RAPE: complaint: delay: effect.

delay was subject to explanation and went only to the credibility and weight of the evidence. The entire question is covered by our previous cases. *State v. Dudley,* 147 Iowa 645; *State v. Peterson,* 110 Iowa 647; *State v. McGhuey,* 153 Iowa 308.

IV. In submitting the case to the jury, the trial court submitted to the consideration of the jury all the included offenses, viz.: assault with intent to commit rape, assault and

4. RAPE: issues: included offenses.

battery, simple assault. The verdict was for assault with intent to commit rape. It is urged first that there is no basis in the evidence for this verdict and that, under the evidence of the prosecutrix, the defendants were guilty of rape or were not guilty at all. As the evidence was sufficient to prove rape, it was necessarily sufficient to prove the assault and the intent to commit. That the jury may have had a reasonable doubt as to whether the rape was actually accomplished under the circumstances shown, and yet have had no reasonable doubt that there was an intent and attempt to accomplish it, involves no necessary inconsistency. This is rendered plain by perusal of appellants' argument on the proposition that the commission of the crime of rape under the circumstances shown was a practical impossibility.

It is further urged that the trial court erred in submitting the included offenses, because the defendants could not have been guilty of any included offenses unless they were guilty

5. RAPE: issues: included offenses.

of the higher offense of rape accomplished. Many of our previous cases are cited in the brief, but they are all cases wherein reversal was sought because of failure of the court to submit the included offenses. It is frequently the right of the defendant to have the included offenses submitted. To submit included offenses when they might have been properly omitted can seldom be prejudicial to a defendant. Under the record in the case at bar, the evidence would sustain a verdict for any one of the included offenses submitted. It clearly sustains the

verdict rendered. That still lower included offenses were submitted to the jury could work no prejudice to the defendants.

V. Complaint is urged that the trial court required the jury to determine whether there was any corroborative evidence to connect the defendants with the offense. It is argued that it is the duty of the court and not the jury to determine whether there was any corroborative evidence. The particular instruction, number eight, thus complained of is long and quite stereotyped in form. The argument is based upon isolated phrases separated from the context. It is true that it was the duty of the court to determine whether there was any corroborative evidence to connect the defendants with the offense. If nay, it was the duty of the court to direct a verdict for the defendants. In overruling the motion for a directed verdict and in submitting the case to the jury, the trial court necessarily found that there was sufficient corroborative evidence to go to the jury. Such corroborating evidence has already been recited herein and we hold it sufficient. The weight and the credibility of the evidence were for the jury. If the jury had discredited this testimony, there would have been no corroboration. If, therefore, the trial court had erroneously instructed the jury as to whether there was any corroborating evidence, it would be prejudicial to the prosecution and not to the defendant. The only mistake the jury could make at that point would be to find in the negative. Taking the instruction as a whole, it is not fairly subject to the criticism made upon it, although it might have laid the question before the jury more concisely.

6. RAPE: evidence: corroboration: province of court and jury stated.

VI. In instruction number seven, the following language was used: "and from all the facts and circumstances given in evidence determine the probability or improbability of her story and whether the defendants or either of them did in fact ravish her as charged." Complaint is directed to the use of the words "her story." It is argued that the question was the prob-

7. RAPE: instructions: prosecutrix's story.

ability or the improbability of the guilt of the defendants and not the probability or the improbability of "her story." We see no ground for complaint here. Unless the jury were to find the story of the prosecutrix materially true, the defendants could not have been found guilty. Neither could they have been acquitted without a rejection of the story of the prosecutrix as being incredible, improbable, or too doubtful. If there was error in using the words complained of, it was that it laid upon the State the burden of sustaining the entire story of the prosecutrix in order to obtain conviction, whereas theoretically her story might have been rejected in part and accepted in part and the accepted part, with the other testi-. mony, might have been sufficient to warrant the conviction. The only possible error, therefore, in the use of these words was that an undue burden was laid upon the State.

VII. Complaint is made of the conduct of the county attorney in the argument of the case to the jury. The record on the question is quite incomplete. In the course of the argu-

8. CRIMINAL LAW : misconduct of prosecutor : sufficiency of showing.

ment, the counsel for defendants objected to the argument of the county attorney and stated to the court what the county attorney had said. Whether it was said in the presence or absence of the judge does not appear. Counsel for the defendants noted an exception to such alleged statement of the county attorney in argument to the jury. The county attorney denied the statement of defendants' attorney as to what he had said. He also purported to recite what he did say. No finding was made by the court as to what was actually said by the county attorney to the jury. No exception was taken by defendants' attorney to any other statement of the county attorney than the one recited by himself. If the denial of the county attorney were found to be correct and if the only statement he made was the one recited by himself to the court, no exception was preserved to the statement in that form. The parties being in dispute as to what was said, the trial court disposed of it as follows: "The Court:

'I can explain all these things and matters when I come to give the instructions.

" 'Gentlemen of the Jury: I will give you the law governing the same when I come to give my instructions. That is all the law in this case.' "

To this statement of the court the attorney for defendants acquiesced without exception. No further reference was made to the subject either in the instructions or otherwise. That the subject was entirely overlooked in the instructions was known to the counsel before the jury went out. No effort appears to have been made either to bring it again to the attention of the court or to note an exception to the failure of the court to complete the record for the purpose of review. The question was likewise raised in the motion for a new trial. But such ground of new trial was based exclusively upon defendants' contention of what the county attorney had said. There was at no time a finding by the trial court or agreement of counsel as to what was said. We think, therefore, that there is nothing before us at this point which we can properly consider. The foregoing comprise the principal questions presented for our consideration. We find no error in the record and nothing to indicate that the defendants did not obtain a fair trial.

The judgment below must therefore be—*Affirmed.*

LADD, C. J., WEAVER and PRESTON, JJ., concur.