GEORGE W. CUNNINGHAM

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 23, 1904.*

1. RAPE—*theory upon which complaint by prosecutrix is admissible.* It is proper, in a prosecution for rape, to prove that the prosecutrix made complaint, but the complaint is not received as an admission by the prosecutrix as to what took place, but upon the theory that the statement represents the spontaneous expression of her outraged feelings.

2. SAME—*when complaint by the prosecutrix is entitled to little weight.* Unexplained delay on the part of the prosecutrix in making complaint of alleged rape upon her weakens the value of the complaint as evidence, and if it is made in response to questions, and not spontaneously, it partakes of the nature of hearsay evidence, and is entitled to but little, if any, probative force.

3. SAME—*when conviction for rape will not be sustained.* A conviction for rape will not be sustained, on appeal, where the evidence so greatly preponderates in favor of accused as to raise a grave doubt of his guilt, and to lead to the conclusion that the verdict was the result of passion or prejudice, and not of that deliberate consideration of the evidence which the law requires.

4. INSTRUCTIONS—*when giving instructions not based on the evidence is prejudicial.* In a prosecution for rape, the giving of instructions upon the subject of circumstantial evidence is prejudicial error where there is no evidence on which to base them and the evidence as to the guilt of the accused is meagre and unsatisfactory.

5. TRIAL—*when permitting prosecution to argue case after defendant has waived argument is improper.* After the opening argument for the prosecution has been closed, argument for the defendant has been waived and another attorney for the prosecution has been denied argument although insisting upon his right, it is improper to permit the first attorney to again address the jury upon the pretense that he had not finished his argument.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

The grand jury of Cook county, on the 28th day of May, 1903, returned an indictment into the criminal court of said county charging George Cunningham with having committed the crime of rape upon one Irene Callahan, a female child under the age of fourteen years. The defendant was arraigned and pleaded not guilty, and upon a trial was convicted and sentenced to the penitentiary for the period of ten years.

The prosecutrix testified she was twelve years of age; that she resided with her mother at 5221 Lake avenue, Chicago; that the defendant had a room upon the sixth floor of the Monroe building, a flat-building located at Nos. 5513-5535 Monroe avenue; that she had formerly resided with her mother upon the third floor of said building; that on the afternoon of April 16, 1903, she went to the Monroe building, and in company with Alice Burke, an acquaintance, thirteen years of age, who temporarily resided in said building, went to the room of the defendant; that they talked with the defendant, looked at some picture books for a time and then left the room; that on her way out of the building she met another acquaintance by the name of Irene, whose last name she did not know; that she and said girl left Alice Burke and returned to the defendant's room, where they remained a short time; that as they were leaving the room the defendant asked her to return at five o'clock; that she returned at that hour, when she found the defendant alone; that the defendant laid a comforter over a reclining chair in the room, placed her upon the chair and had connection with her; that she was not afraid; that it hurt her and she cried out to stop three times; that she then went home; that she said nothing to her mother as to what had occurred at the defendant's room.

Mrs. E. A. Parks, a probation officer of the juvenile court of Chicago, testified Irene Callahan made complaint

to her about three weeks after said occurrence. Upon cross-examination she said:

Q. "You say that Irene Callahan made complaint to you?

A. "Yes, sir.

Q. "At the time of making complaint did she mention any name?

A. "Mr. Cunningham and Mr. Burns. No one else.

Q. "Do you remember the conversation that led up to the making of the complaint?

A. "I said I was sorry she was in trouble. She was a friend of mine. I don't know what the conversation was that led up to that question. I asked her whether she was assaulted by men. I do not remember whether her answer was voluntary or not."

Dr. James W. Walker, a physician, testified that on May 15 he made an examination of the private parts of Irene Callahan. On cross-examination he said:

Q. "From the examination are you able to state whether the girl, Irene Callahan, ever had sexual intercourse with a man?

A. "I could not. Her sexual organs, compared with those of a child of her age, were normal."

No further evidence was introduced upon behalf of the People.

Three apparently reputable witnesses testified the prosecutrix's reputation for truth and veracity was bad and that they would not believe her under oath, while twelve equally credible witnesses testified they knew the defendant's reputation for chastity and good morals and that it was good.

The defendant, who was a witness in his own behalf, denied that Irene Callahan was ever in his room with him alone, or that she was there with Alice Burke, or that he had ever had connection with her, or that he ever attempted to have connection with her or solicited her to have connection with him.

Alice Burke testified she was not allowed to associate with Irene Callahan, and denied that she was ever in defendant's room with her.

HARRY L. STROHM, and OSSIAN CAMERON, for plaintiff in error.

H. J. HAMLIN, Attorney General, and CHARLES S. DENEEN, State's Attorney, for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first assigned as error that the verdict and judgment are not supported by the evidence. The verdict and judgment rest entirely upon the testimony of the prosecutrix. The prosecution sought to corroborate the testimony of the prosecutrix by proof that she made complaint to Mrs. Parks. The statement to Mrs. Parks was made some three weeks after the offense was alleged to have been committed, and was made in reply to questions propounded to the prosecutrix by Mrs. Parks. While it is proper, in prosecutions of the character of this, to prove that the prosecutrix made complaint, such complaint is not received as the admissions of the prosecutrix as to what took place at the time of the commission of the offense, but such complaint is admitted upon the theory that the statement of the prosecutrix represents the spontaneous expression of her outraged feelings, and for that reason is admissible in evidence without the sanction of an oath. When the complaint is not made immediately, unless the delay is satisfactorily explained its value as evidence is much weakened, and when the complaint is made, not as the spontaneous act of the prosecutrix but in response to questions put to her, as was the case at the time the statement was made by the prosecutrix to Mrs. Parks, the complaint of the prosecutrix assumes the form of a recital of the facts connected with a past transaction and is in the nature of hearsay evidence, and has but little, if any, probative force as

evidence. The testimony of Mrs. Parks shows that with-
in the meaning of the law the statement made to her by
the prosecutrix did not amount to a complaint, but was
the mere recital, in response to questions put to her by
Mrs. Parks, of what she claimed was a past transaction,
and was hearsay evidence; and had the objection to the
testimony of Mrs. Parks been based upon the ground that
she was giving hearsay evidence, instead of upon the
ground that the time at which the complaint was made
was too remote from the date of the commission of the
offense, the statement of Mrs. Parks as to what the
prosecutrix said to her in reply to the questions asked
the prosecutrix should have been excluded, which would
have eliminated from the consideration of the jury sub-
stantially all the testimony of Mrs. Parks. In no event
can it be said the testimony of Mrs. Parks corroborated
or tended to corroborate the testimony of the prosecu-
trix upon the main charge.

The testimony of Dr. Walker is in direct conflict with
the testimony of the prosecutrix, and instead of being in
corroboration of her testimony is in conflict therewith;
and the testimony of Alice Burke is in direct contradic-
tion of the testimony of the prosecutrix. E. S. Sturges,
the general agent for the Monroe building, H. C. Chapman,
the local agent of said building, and Mrs. A. J. Keeler,
who lived in the building and was connected with the
Chicago Union Hospital and the National Emergency
Hospital, testified, respectively, that they had known the
prosecutrix prior to the trial; that they knew her repu-
tation for truth and veracity in the neighborhood where
she resided; that her reputation was bad, and that they
would not believe her under oath.

The crime with which the defendant is charged is one
of the most heinous known to the law, and this court, in
*Austine* v. *People*, 51 Ill. 236, on page 240, in speaking of
the proof of the offense with which defendant is charged,
said: "The evidence to support it [the charge] should

not be of a questionable character, but sufficient to remove all reasonable doubt from the minds of the jury." And in the case of *Keller* v. *People*, 204 Ill. 604, which was a case upon the facts very similar to the one at bar, on page 610 it was said: "While this court is to the fullest extent committed to the doctrine 'that the jury, in their deliberations, are the judges of the facts and the weight of the evidence in all criminal cases,' yet this court will not hesitate to reverse a judgment of conviction in a criminal case where the evidence on which it is based is of an unsatisfactory character, and where the evidence in the case so greatly preponderates in favor of the defendant that after a patient consideration thereof there remains such grave and serious doubt of the guilt of the accused as leads to the conclusion that the verdict of the jury is the result of prejudice or passion, and not of that calm and deliberate consideration of the evidence which the law requires." In view of these holdings, if the case made by the evidence of the People was uncontradicted by the testimony of the defendant, it is doubtful if a verdict of conviction could rightfully be sustained upon said testimony against the defendant.

The defendant is a bachelor, forty-four years of age, a teacher and author by profession, and had lived in said Monroe building for something like two years. He lodged, performed his literary work and gave instructions to his pupils in his apartment, and the children about the building, including the prosecutrix, occasionally entered his apartment. The apartment occupied by him was in a public place upon the sixth floor of a building which covered a space 150 feet by 150 feet and contained an inside court. The floor was reached by an elevator, and the apartments located thereon, as well as those upon the other floors of the building, were occupied by other persons, several of which apartments were located within a few feet of the apartment occupied by the defendant. The defendant denied his guilt in the

most positive terms, and in support of his general character for chastity and good morals called Mrs. A. J. Keeler, H. C. Chapman and E. S. Sturges, heretofore referred to; H. S. Driesslein, a student of astronomy and astrology; Dr. C. P. Chamberlain, a physician sixty-three years old; B. H. Summers, a surveyor and civil engineer; C. M. Jones, superintendent of "The Fair" department store, in Chicago; Andrew Bowles, a newspaper artist; Byron D. Adsit, a newspaper publisher; Dr. Thomas A. Bland, a retired physician; Robert F. Hanisch, a manufacturer of saddlery hardware, and Dr. J. R. Price, who severally testified they had known defendant for periods of from two to ten years, and that his reputation for chastity and good morals was good. While evidence of good reputation, where the proof is clear as to a defendant's guilt, is entitled to but little weight, in a doubtful case proof of good reputation often turns the scale in favor of a defendant and entitles him to an acquittal. From a consideration of all the evidence found in this record we are impressed with a firm conviction that there is such grave and serious doubt of the guilt of the accused as to lead to the conclusion that the verdict of the jury was the result of prejudice and passion, and not of that calm and deliberate consideration of the evidence which the law requires.

It is next assigned as error that the court erred in instructing the jury as to the law. The court gave to the jury, at the instance of the People, twelve instructions, three of which were devoted to the subject of reasonable doubt and cover more than a page of the printed abstract. While the substance of what is stated in said instructions as to the law governing the question of reasonable doubt may be found set down in the text books and reports of adjudicated cases as a correct exposition of the law upon that subject, when thrown together as the law upon that subject as it is found in the three instructions given in this case, instead of enlightening the

jury upon that subject it is more likely to confuse and mislead them. The court also gave to the jury two instructions upon the subject of circumstantial evidence. There was no evidence in the case upon which to base them, and they should not have been given.

While we would not reverse the case by reason of the giving of the instructions complained of if the evidence satisfied us of the guilt of the defendant, in view of the uncertain character of the evidence relied upon for a conviction we think the giving of the two instructions last referred to constituted prejudicial error in this: that they may have led the jury into the field of conjecture in search of some fact or circumstance not legitimately in proof, which to their minds tended to establish the guilt of the accused and upon which they might justify themselves in basing a verdict against the defendant. At least it is not clear that they did not have that effect, or that the giving thereof did not produce a verdict which might have been in favor of the defendant but for the giving of said instructions.

It is also assigned as error that the court permitted the prosecutor to make an argument to the jury after argument upon behalf of the defendant had been waived. When the trial commenced, the People and the defendant were each represented by two attorneys. During the progress of the trial one of the attorneys for the defendant was taken ill and forced to abandon the trial, and the trial proceeded in his absence. At the close of the evidence one of the attorneys for the People made the opening argument to the jury, and at the close of his argument the court took a recess for the noon hour. On the coming in of court in the afternoon the attorney for the defendant waived his right to address the jury on behalf of the defendant, whereupon the attorney for the People who had not addressed the jury insisted that he had the right to address the jury. The court refused to permit him to address the jury, whereupon he insisted

that his colleague had not completed his argument to the jury and that he ought to be permitted to again address the jury. The attorney for the defendant objected to further argument on behalf of the People, but the court, over his objection, permitted the attorney who had closed his argument before the recess to again address the jury. When the attorney for the People closed the opening argument, the attorney for the defendant had the right to waive the argument to the jury upon behalf of the defendant if he saw fit so to do, and if he did waive the defendant's right to have the case argued to the jury, the People did not have the right to further argue the case to the jury. It was doubtless within the discretion of the court to permit the attorney who had first presented his views to the jury by way of argument, to present further argument to the jury on the coming in of the court in the afternoon, if it appeared that the attorney had, by inadvertence or otherwise, omitted something which he had intended to say, or if some matter had arisen during the recess which made it proper that he should again address the jury; but after the opening argument had been closed and argument on behalf of the defendant had been waived, and another attorney had insisted he had the right to address the jury notwithstanding argument had been waived on behalf of the defendant, to then permit the attorney who had already argued the case and closed his argument to again address the jury under the pretense that he had not finished his argument, we think was unwarranted and should not have been permitted.

We have examined this record with much care, and are of the opinion the judgment against defendant should be set aside and that he should be granted a new trial.

The judgment of the criminal court of Cook county will therefore be reversed and the cause remanded to that court for a new trial.    *Reversed and remanded.*