# STATE OF NORTH DAKOTA v. OLIVER MACKEY.

### (153 N. W. 982.)

**Rape — statements of prosecutrix — to school teacher and others — private investigation — not voluntary — not under oath and are hearsay.**

Defendant appeals from conviction for statutory rape. Fifty-seven assignments of error appear, but only enough thereof are discussed to entirely destroy plaintiff's case.

1. The testimony of prosecutrix's teacher, the principal of the school, and a lady member of the school board, as to statements made to them by prosecutrix during a private investigation, was improperly admitted upon the trial. Such statements were not voluntary, and, not being under oath, were hearsay.

**Rape — testimony by prosecutrix — weak-minded person — memory — times and places — contradictory — unreasonable — conviction on.**

2. The only remaining testimony properly admitted was given by the prosecutrix. She was so weak-minded that she had no memory of dates nor conception of time. Her testimony in many material particulars is contradicted by the state's own witnesses, and is so unreasonable that it cannot support a conviction.

**Admission of evidence — errors.**

3. Other errors, while not necessary to a disposition of the case, set forth in explanation of the action of the jury in convicting the defendant.

Opinion filed June 23, 1915.

Appeal from the District Court of Barnes County, *Coffey,* **J.** Reversed.

*A. P. Paulson,* for appellant.

It is the universal holding of the authorities that each act of carnal intercourse testified to by the prosecutrix constitutes a separate, distinct, and substantive offense. This is elementary. State v. Brown, 58 Iowa, 298, 12 N. W. 318; State v. King, 117 Iowa, 484, 91 N. W. 768; People v. Clark, 33 Mich. 112, 1 Am. Crim. Rep. 660; State v. Bonsor, 49 Kan. 758, 31 Pac. 736; State v. Hilberg, 22 Utah, 27, 61 Pac. 215; State v. Masteller, 45 Minn. 128, 47 N. W. 541; State v. Acheson, 91 Me. 240, 39 Atl. 570; State v. Parish, 104 N. C. 679, 10 S. E. 457; People v. Castro, 133 Cal. 11, 65 Pac. 13; Stone v. State, 45 Tex. Crim. Rep. 91, 73 S. W. 956; People v. Williams, 133 Cal. 165, 65 Pac. 323; People v. Flaherty, 162 N. Y. 532, 57 N. E. 73.

Evidence of prior acts of intercourse is only admissible for the purpose of tending to show the commission of the act upon which a conviction is sought. State v. Scott, 172 Mo. 536, 72 S. W. 897; State v. Patrick, 107 Mo. 147, 17 S. W. 666; note to People v. Molineux, 62 L.R.A. 329; Grabowski v. State, 126 Wis. 447, 105 N. W. 805; Blair v. State, 72 Neb. 501, 101 N. W. 17; People v. Abbott, 97 Mich. 484, 37 Am. St. Rep. 360, 56 N. W. 862; State v. Trusty, 122 Iowa, 82, 97 N. W. 989; State v. Palmberg, 199 Mo. 233, 116 Am. St. Rep. 477, 97 S. W. 566; Sykes v. State, 112 Tenn. 572, 105 Am. St. Rep. 972, 82 S. W. 185; Batchelor v. State, 41 Tex. Crim. Rep. 501, 96 Am. St. Rep. 791, 55 S. W. 491; State v. Schueller, 120 Minn. 26, 138 N. W. 937.

Evidence of such acts occurring subsequent to the one on which the prosecution is based is not competent or admissible. Lunn v. State, 44 Tex. 85; Fisher v. State, 33 Tex. 792.

Where separate acts of intercourse are shown or sworn to by the prosecutrix, defendant should not be called upon to defend himself against each of such acts, extending over a period of several months;

the information charges but one act, and the state should have been compelled to elect, and to stand or fall, upon the information. People v. Castro, 133 Cal. 11, 65 Pac. 13; State v. Hilberg, 22 Utah, 27, 61 Pac. 215; People v. Williams, 133 Cal. 165, 65 Pac. 323.

No request of the defendant that the state elect as to which act it would seek conviction on, until after the state had rested. The prosecutrix designated the *time* of the *first* act of sexual intercourse, and then testified as to other acts. It seems settled that the law would imply an election of the first act as the one upon which a conviction would be sought, without the necessity for any request. People v. Jenness, 5 Mich. 305; State v. Acheson, 91 Me. 240, 39 Atl. 570; State v. Hilberg, 22 Utah, 27, 61 Pac. 215; People v. Williams, 133 Cal. 165, 65 Pac. 323; People v. Clark, 33 Mich. 112, 1 Am. Crim. Rep. 660; State v. Palmberg, 199 Mo. 233, 116 Am. St. Rep. 477, 97 S. W. 566; People v. Flaherty, 162 N. Y. 532, 57 N. E. 73.

The only purposes of cross-examination of a defendant charged with crime are to show motive, and to test his credibility. No evidence is competent which is not of a character to throw light on the *issue.* It is never competent to prove, against the defendant on trial for crime, the commission of another crime, simply to show that he is of a criminal disposition. Proof of one crime has no tendency to prove the commission of another crime, unless the two are so connected or related that proof of one has a direct bearing upon the other,—in other words, that such proof tends to show or furnish *motive.* State v. Hazlet, 16 N. D. 444, 113 N. W. 374; State v. LaMont, 23 S. D. 174, 120 N. W. 1104; Com. v. Jackson, 132 Mass. 16; State v. Carson, 66 Me. 116, 2 Am. Crim. Rep. 58; People v. Crapo, 76 N. Y. 288, 32 Am. Rep. 302; People v. Brown, 72 N. Y. 571, 28 Am. Rep. 183; Gifford v. People, 87 Ill. 210; Hayward v. People, 96 Ill. 492; Rice, Crim. Ev. 215; State v. Apley, 25 N. D. 298, 48 L.R.A.(N.S.) 269, 141 N. W. 740; Richardson v. Gage, 28 S. D. 390, 133 N. W. 692, Ann. Cas. 1914B, 534; Carroll v. State, 32 Tex. Crim. Rep. 431, 40 Am. St. Rep. 786, 24 S. W. 100; Owens v. State, 39 Tex. Crim. Rep. 391, 46 S. W. 240; Ball v. State, 44 Tex. Crim. Rep. 489, 72 S. W. 384; Dabney v. State, 82 Miss. 252, 33 So. 973; State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052; Holder v. State, 58 Ark.

473, 25 S. W. 279; People v. Molineux, 168 N. Y. 291, 62 L.R.A. 193, 61 N. E. 286.

Impeaching witnesses are not required, in fact, they are not allowed, to speak from their own knowledge as to acts and transactions from which the character or reputation of the other witness has been derived. They must speak from their own knowledge only of what is generally said of the other by those among whom he resides and associates. Crabtree v. Kile, 21 Ill. 180; Crabtree v. Hagenbaugh, 25 Ill. 233, 79 Am. Dec. 324.

The evidence must be confined to general reputation, and it cannot be permitted as to particular facts. Taylor v. Ryan, 15 Neb. 573, 19 N. W. 475; Gilliam v. State, 1 Head, 38, 73 Am. Dec. 161; Blue v. Kirby, 1 T. B. Mon. 195, 15 Am. Dec. 95; Shaw v. Emery, 42 Me. 59; Root v. Hamilton, 105 Mass. 22; Foster v. Newbrough, 58 N. Y. 481; Long v. Morrison, 14 Ind. 595, 77 Am. Dec. 72; Rudsdill v. Slingerland, 18 Minn. 380, Gil. 342; Newman v. Mackin, 13 Smedes & M. 383; Spears v. Forrest, 15 Vt. 435; Thurman v. Virgin, 18 B. Mon. 792; People v. Yslas, 27 Cal. 631; State v. Morse, 67 Me. 428; Kilburn v. Mullen, 22 Iowa, 498; People v. Josephs, 7 Cal. 129.

A statement made by the complainant, within meaning of the law, must be a voluntary act of the injured party; it is the voluntary recital of a wrong that is received, to strengthen the testimony of a woman who claims that she has been ravished. State v. Bebb, 125 Iowa, 494, 101 N. W. 189; State v. Werner, 16 N. D. 83, 112 N. W. 60; People v. Wilmot, 139 Cal. 103, 72 Pac. 838; Cunningham v. People, 210 Ill. 410, 71 N. E. 389; Parker v. State, 67 Md. 329, 1 Am. St. Rep. 387, 10 Atl. 219; State v. Pollard, 174 Mo. 607, 74 S. W. 969; State v. Peres, 27 Mont. 358, 71 Pac. 162; 33 Cyc. 1468.

The statement must be a part of *res gestæ*. It was not so in this case. State v. Murphy, 17 N. D. 58, 17 L.R.A.(N.S.) 609, 115 N. W. 84, 16 Ann. Cas. 1133; Rice, Ev. §§ 212 et seq.; People v. Lane, 100 Cal. 379, 34 Pac. 856; People v. Tucker, 104 Cal. 440, 38 Pac. 195; Cole v. State, 125 Ga. 276, 53 S. E. 958; Warrick v. State, 125 Ga. 133, 53 S. E. 1027; Johnson v. State, 129 Wis. 146, 5 L.R.A. (N.S.) 809, 108 N. W. 55, 9 Ann. Cas. 923; Stevison v. State, 48 Tex. Crim. Rep. 601, 89 S. W. 1072; State v. Mickler, 73 N. J. L. 513, 64 Atl. 148; 2 Jones, Ev. §§ 347, 348 and notes.

If not a part of the *res gestæ,* such statements are never admitted as original declarations. They are only for the purpose of corroboration. Lawson v. State, 17 Tex. App. 292; Thompson v. State, 38 Ind. 39; Phillips v. State, 9 Humph. 246, 49 Am. Dec. 709; Griffin v. State, 76 Ala. 29; Laughlin v. State, 18 Ohio, 99, 51 Am. Dec. 444; State v. Emeigh, 18 Iowa, 122; State v. Mitchell, 68 Iowa, 116, 26 N. W. 44; State v. De Wolf, 8 Conn. 93, 20 Am. Dec. 90.

If the injured female is not produced as a witness, or is incompetent by reason of immature age, evidence of her statements made soon after the commission of the deed cannot be admitted. People v. McGee, 1 Denio, 19; Weldon v. State, 32 Ind. 81; People v. Graham, 21 Cal. 261; Com. v. Gallagher, 2 Clark (Pa.) 297; State v. Emeigh, 18 Iowa, 122.

Such evidence is confined to corroboration, and cannot be used to supply additional facts not otherwise proved. State v. Wheeler, 116 Iowa, 212, 93 Am. St. Rep. 236, 89 N. W. 978; Scott v. State, 48 Ala. 420; State v. Shettleworth, 18 Minn. 208, Gil. 191; Reg. v. Guttridge, 9 Car. & P. 471; State v. Dudley, 147 Iowa, 645, 126 N. W. 813; State v. Wheeler, 116 Iowa, 212, 93 Am. St. Rep. 236, 89 N. W. 978; State v. Pollard, 174 Mo. 607, 74 S. W. 969; Cunningham v. People, 210 Ill. 410, 71 N. E. 389.

The court clearly erred in admitting all the evidence of the several acts of intercourse as testified by the complaining witness. State v. Acheson, 91 Me. 240, 39 Atl. 570; People v. Williams, 133 Cal. 168, 65 Pac. 323; State v. Palmberg, 199 Mo. 233, 166 Am. St. Rep. 476, 97 S. W. 566.

While an appellate court will not disturb a judgment for an immaterial error, yet it should appear beyond doubt that the error of which complaint is made did not and could not have prejudiced the rights of the objecting party. Derry v. Cary, 5 Wall. 795, 18 L. ed. 653; Norfolk & P. Traction Co. v. Miller, 98 C. C. A. 453, 174 Fed. 607; Gilmer v. Higley, 110 U. S. 47, 28 L. ed. 62, 3 Sup. Ct. Rep. 471; Taggart v. Bosch, 5 Cal. Unrep. 690, 48 Pac. 1092; Thomas v. Carey, 26 Colo. 485, 58 Pac. 1093; Norfolk & W. R. Co. v. Briggs, 103 Va. 105, 48 S. E. 521; Henry v. Colorado Land & Water Co. 10 Colo. App. 14, 51 Pac. 90; Cooke v. McAleena, 18 Misc. 219, 41 N. Y. Supp. 479; Comaskey v. Northern P. R. Co. 3 N. D. 279, 55 N. W. 732; Moore

v. Booker, 4 N. D. 558, 62 N. W. 607; Hegar v. De Groat, 3 N. D. 354, 56 N. W. 150; McKay v. Leonard, 17 Iowa, 569; Freeman v. 'Rankins, 21 Me. 446; Hayne, New Trial, § 287.

*M. J. Englert,* State's Attorney, and *H. A. Olsberg,* Assistant State's Attorney, for respondent.

The courts are becoming more unanimous in the view that statutory rape cases form an exception "to the general rule that, upon a trial for an alleged offense, the commission of another offense cannot be shown." State v. Allison, 24 S. D. 622, 124 N. W. 747.

In prosecution for rape committed upon a girl under the age of consent and without force, evidence is admissible of other acts of intercourse between defendant and the prosecuting witness. State v. Reineke, 89 Ohio St. 390, L.R.A. 1915A, 138, 106 N. E. 52; People v. Thompson, 212 N. Y. 249, L.R.A. 1915D, 236, 106 N. E. 78, Ann. Cas. 1915D, 162; People v. Neely, 171 Mich. 249, 137 N. W. 150; People v. Duncan, 261 Ill. 339, 103 N. E. 1043; State v. Sysinger, 25 S. D. 110, 125 N. W. 879, Ann. Cas. 1912B, 997; State v. Rash, 27 S. D. 185, 130 N. W. 91, Ann. Cas. 1913D, 656; Evers v. State, 84 Neb. 708, 121 N. W. 1005, 19 Ann. Cas. 96; State v. Cannon, 72 N. J. L. 46, 60 Atl. 177; State v. Willett, 78 Vt. 157, 62 Atl. 48; State v. Sargent, 62 Wash. 692, 35 L.R.A.(N.S.) 173, 114 Pac. 868; State v. Borchert, 68 Kan. 360, 74 Pac. 1108; People v. Soto, 11 Cal. App. 431, 105 Pac. 420; State v. Coss, 53 Or. 462, 101 Pac. 193; State v. Trusty, 122 Iowa, 82, 97 N. W. 989; State v. Brown, 85 Kan. 418, 116 Pac. 508; State v. Schueller, 120 Minn. 26, 138 N. W. 937; People v. Nichols, 159 Mich. 355, 124 N. W. 25; Morris v. State, 9 Okla. Crim. Rep. 241, 131 Pac. 731; Sykes v. State, 112 Tenn. 572, 105 Am. St. Rep. 972, 82 S. W. 185; State v. Richey, 88 S. C. 239, 70 S. E. 729; State v. Peres, 27 Mont. 358, 71 Pac. 162; Boyd v. State, 81 Ohio St. 239, 135 Am. St. Rep. 781, 90 N. E. 355, 18 Ann. Cas. 441; State v. Hardin, 63 Or. 305, 127 Pac. 789; State v. Lancaster, 10 Idaho, 410, 78 Pac. 1081; State v. Scott, 172 Mo. 536, 72 S. W. 897.

The courts are admitting evidence of subsequent acts of intercourse. People v. Soto, 11 Cal. App. 431, 105 Pac. 420; State v. Henderson, 19 Idaho, 524, 114 Pac. 30; Woodruff v. State, 72 Neb. 815, 101 N. W. 1114; Leedom v. State, 81 Neb. 585, 116 N. W. 496; Morris v.

State, 9 Okla. Crim. Rep. 241, 131 Pac. 731; Sykes v. State, 112 Tenn. 572, 105 Am. St. Rep. 972, 82 S. W. 185; State v. Hardin, 63 Or. 305, 127 Pac. 789; State v. Brown, 85 Kan. 418, 116 Pac. 508; State v. Sebastian, 81 Conn. 1, 69 Atl. 1054; Levy v. Territory, 13 Ariz. 425, 115 Pac. 415; State v. Richey, 88 S. C. 239, 70 S. E. 729; State v. Henderson, 243 Mo. 503, 147 S. W. 480; Battles v. State, 63 Tex. Crim. Rep. 147, 140 S. W. 783; Smith v. State, 64 Tex. Crim. Rep. 454, 142 S. W. 1173; Lott v. State, — Tex. Crim. Rep. —, 146 S. W. 544; Cain v. State, — Tex. Crim. Rep. —, 153 S. W. 147; Proper v. State, 85 Wis. 615, 55 N. W. 1035; People v. Neely, 171 Mich. 249, 137 N. W. 150; Harmon v. Territory, 15 Okla. 147, 79 Pac. 765; People v. Abrams, 249 Ill. 619, 94 N. E. 985.

The state directed its main proof to the first alleged act of intercourse, and, by so doing, elected as to the charge upon which it would seek conviction. This is apparent, and all that was necessary. State v. Rash, 27 S. D. 185, 130 N. W. 91, Ann. Cas. 1913D, 656.

Upon this point also, in such cases, courts are very liberal. State v. Sysinger, 25 S. D. 110, 125 N. W. 879, Ann. Cas. 1912B, 997; State v. Scott, 172 Mo. 536, 72 S. W. 897; State v. Higgins, 121 Iowa, 19, 95 N. W. 244; Bishop, Statutory Crimes, § 682.

The sole purpose of the evidence of prior acts of intercourse was to *prove the offense charged.* An election is presumed under such circumstances. State v. Acheson, 91 Me. 240, 39 Atl. 570; State v. Smith, 22 Vt. 74; State v. Crimmins, 31 Kan. 376, 2 Pac. 574.

The statements of the prosecuting attorney made in court, with reference to the time, the evidence given, and the charge of the court, all taken together, amount to an election. Wells v. State, 52 Tex. Crim. Rep. 153, 105 S. W. 820; Cox v. State, — Tex. Crim. Rep. —, 86 S. W. 1021; Leedom v. State, 81 Neb. 585, 116 N. W. 496; State v. Hasty, 121 Iowa, 507, 96 N. W. 1115.

This state is committed to the rule that a very liberal cross-examination of the defendant is permitted, when he takes the witness stand in his own behalf. State v. Apley, 25 N. D. 298, 48 L.R.A.(N.S.) 269, 141 N. W. 740; State v. Kent (State v. Pancoast) 5 N. D. 551, 35 L.R.A. 518, 67 N. W. 1052; State v. Rozum, 8 N. D. 557, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482; Territory v.

O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Malmberg, 14 N. D. 523, 105 N. W. 614.

The defendant may show that the prosecuting witness has been an inmate of a house of prostitution. Such evidence goes to the credibility of the witness. The rule is no different when the defendant himself assumes the role of witness in his own behalf. Yanke v. State, 51 Wis. 464, 8 N. W. 276; Tla-Koo-Yel-Lee v. United States, 167 U. S. 274, 42 L. ed. 166, 17 Sup. Ct. Rep. 855; De Lucenay v. State, — Tex. Crim. Rep. —, 68 S. W. 796; State v. Boyd, 178 Mo. 2, 76 S. W. 979; Flohr v. Territory, 14 Okla. 477, 78 Pac. 565; Rhea v. State, 104 Ark. 162, 147 S. W. 463; Wilson v. State, 71 Tex. Crim. Rep. 426, 160 S. W. 967; Leonard v. State, 106 Ark. 449, 153 S. W. 590; Miller v. Journal Co. 246 Mo. 722, 152 S. W. 40, Ann. Cas. 1914B, 679; State v. Harris, 150 Mo. 56, 51 S. W. 481; State v. Sysinger, 25 S. D. 110, 125 N. W. 879, Ann. Cas. 1912B, 997; State v. Denny, 17 N. D. 519, 117 N. W. 869.

The state qualified its impeaching witnesses by showing acquaintance, —acquaintance with those with whom they had talked, and in the community where the witnesses all resided, and by showing the opportunity to know of the general reputation of the witnesses whose testimony was sought to be impeached. Spies v. People, 122 Ill. 1, 3 Am. St. Rep. 320, 12 N. E. 865, 17 N. E. 898, 6 Am. Crim. Rep. 570; Heath v. Scott, 65 Cal. 548, 4 Pac. 557; Robinson v. State, 16 Fla. 835; Phillips v. Kingfield, 19 Me. 375, 36 Am. Dec. 760; French v. Millard, 2 Ohio St. 44; Bucklin v. State, 20 Ohio, 18; State v. Madison, 23 S. D. 584, 122 N. W. 647; Fisher v. Conway, 21 Kan. 18, 30 Am. Rep. 419.

The complaints and recitals made by the prosecutrix to her teachers, in answer to questions, were properly received in evidence. State v. Dudley, 147 Iowa, 645, 126 N. W. 813; State v. Peres, 27 Mont. 358, 71 Pac. 162; People v. Gage, 62 Mich. 271, 4 Am. St. Rep. 854, 28 N. W. 835; Rex v. Osborne [1905] 1 K. B. 551, 74 L. J. K. B. N. S. 311, 69 J. P. 189, 53 Week. Rep. 494, 92 L. T. N. S. 393, 21 Times L. R. 288, 2 Ann. Cas. 830; People v. Brown, 53 Mich. 531, 19 N. W. 172.

Such evidence was properly admitted under the law of this state. State v. Werner, 16 N. D. 83, 112 N. W. 60; Territory v. Keyes, 5

Dak. 244, 38 N. W. 440; State v. Werner, 16 N. D. 83, 112 N. W. 60; State v. Dudley, 147 Iowa, 645, 126 N. W. 813.

BURKE, J.  Defendant appeals from conviction for statutory rape. There are fifty-seven assignments of error, but we will discuss only those assignments which, in our opinion, result in the total destruction of the state's evidence, and necessitate a dismissal of the action.  The facts will appeal more fully in the opinion.  For the purposes of this statement, it suffices to say that defendant is a married man living with his family, and engaged in the plumbing and boiler-making business at Valley City, where he has resided for more than thirty years.  At the time of his arrest he was over fifty-six years of age, and was serving as an alderman of that city.  The complaining witness, Bertha Bonen, was twelve years of age at the time of the alleged offense, and is concededly very backward in mental development.  Respondent describes her as follows:  "Her mind was so lacking in intelligence that she could only give physical facts.  The girl, though of more than average size physically for a girl of her age, had the mind of a child of about six, seven, or eight years old.  It was a literal impossibility for her to fix any dates."  The trial court in his memorandum opinion says, "(she is) rather large, with a mind of a child four or five years of age in certain respects, advanced to the third grade in her studies." During the year 1913, she attended the Valley City public schools. About the last of October, her teacher took from her possession a note of such indecent nature that it was referred to the principal of the school, who summoned the prosecutrix, and examined her as to her moral conduct.  As a result of this investigation, prosecutrix admitted immoral relations with several young boys, to one of whom the note was addressed; but she did not mention defendant.  A series of investigations, by a member of the school board, the principal of the school, and the teacher, followed, whereat the prosecutrix, in response to questions, implicated defendant and another business man of Valley City.  Arrests followed, resulting in the conviction of defendant and the acquittal of the other business man, who, however, was tried before another judge and in a different county.  Upon this appeal, defendant seeks to destroy all of the evidence offered by the state, which consists, by the way, entirely of statements by the prosecutrix upon the trial,

and her statements to the teacher and school board above mentioned. It is contended that the testimony of the prosecutrix is so self-impeached and impossible of belief that the court should have advised the jury to return a verdict of not guilty.

(1) Before taking up the question of the sufficiency of the evidence, we will discuss a few assignments of error, which dispose of the testimony of all witnesses, except the prosecutrix. As already intimated, prosecutrix was given a severe examination by the teacher, the principal, and the lady member of the school board. This investigation of itself was entirely proper, and well within the duties of the three ladies who conducted the same, whose motives were the highest. They performed a duty they owed to the child, the school, and the community, and are entitled to the highest praise. Whether or not they should have been allowed to narrate the unsworn statements made to them by the girl is an entirely different question. Prosecutrix's teacher says that at these meetings, prosecutrix was requested to come, and did not come voluntarily. That all of the statements made by her were in response to questions. The principal says that there had been four meetings with the prosecutrix.

She testifies in response to questions:

Q. She was put through a pretty fair system of cross-examination, was she not?

A. No, it was not. Questions put in a general way.

Q. Inquired as to who the different parties were, etc.?

A. Yes.

Q. Did you suggest any of these?

A. No.

Q. Did you not tell her it was better for her to tell everything as it was, not to keep back anything at any one of the meetings?

A. There may have been something said to that effect, just simply telling her it was always better to tell the truth. She talked quite freely. She simply added a few more names, that is all, at the second meeting.

Q. But the third time?

A. She added this one other name. (The defendant's was the name added at the third meeting.)

31 N. D.—14.

Mrs. W., the member of the school board, testifies:

A. The answers were in response to questions. She did not appear before us at the meeting under any suggestions coming from her and indicating to us that she wanted to discuss the subject with us. She came in response to our request. We asked her questions.

All of those witnesses were allowed to testify that prosecutrix at the third meeting, and in response to questions, stated to them that she had sexual intercourse with the defendant five times, the last time being November 8th. The evidence was offered as corroboration of the girl's testimony, and for the purpose of fixing the date of the last act of intercourse. It is apparent that the statement of the prosecutrix to these persons was not spontaneous, nor voluntary, but, in fact, made only after repeated questionings, and was in no sense part of the *res gestæ*. It is apparent that the teachers and school board were making repeated and thorough investigations, and using considerable moral force upon the girl to arrive at the bottom of the whole affair. The statement was made more than a year after the first act of intercourse, and at least six days after the last claimed by the state, and at the third meeting, at least, of such investigation. If the statements were admissible at all, it was not as original evidence, but for the purpose of corroboration. The reason for this exception to the general hearsay rule is that the outraged female is prompted by instinct to make known her wrongs and to seek sympathy and assistance. When given spontaneously and promptly, her unsworn statements are received in evidence with the same force as though given under the sanctity of an oath. In State v. Werner, 16 N. D. 83, 112 N. W. 60, this court says: "Appellant's seventh assignment of error is predicated upon the ruling of the court in permitting the mother of the child to testify as to statements made to her by such child. The testimony complained of related to statements made by Lena to her mother on June 16, being three days after the offense was committed, in which she told her mother, in effect, that defendant had taken indecent liberties with her person. These statements were merely hearsay, and were incompetent, therefore, in chief, to prove the commission of the offense, unless they come within some exception to the general rule as to hearsay testimony. The courts hold quite generally, however, that it is proper to prove that the

prosecutrix, recently after the commission of the offense, made complaint to others as to the commission of such offense, basing their decision upon the ground that such testimony is admissible as being in corroboration of her testimony in court. Other courts base their decisions, sustaining the admissibility of such testimony, upon the ground that such statements are a part of the *res gestæ;* while others give as a reason for the rule that the failure to complain of the outrage is a circumstance indicating that the female was a consenting party to the act. The latter reason does not appeal to us with much force; for, if such is the reason upon which the rule is based, then such rule could not well apply to a case such as this, where the outraged female is but eight years of age, and hence below the age of consent. If the rule is to apply at all, we think it certainly should apply in a case of this kind. We think the better rule is that such proof may be admissible as part of the *res gestæ, if the statement was made immediately following the commission of the crime, in which event the particulars of the complaint may be proved as part of the state's case in chief, the same as any facts which are a part of the res gestæ.* [Italics ours.] . . . In most jurisdictions, such testimony in the first instance is restricted to a mere statement of the fact that a complaint was made, without disclosing the particulars thereof." At 33 Cyc. 1462, it is said: "Nor, as a rule, are her declarations admissible as proof of the crime charged, or as corroborating evidence, unless they are part of the *res gestæ,* or unless they are admissible under the rules in the particular jurisdiction as to the admissibility of complaints. But her declarations immediately after the outrage are admissible as part of the *res gestæ.*" And at page 1466: "So, also, if the statements are made immediately after the commission of crime, they are admissible as part of the *res gestæ.* . . . The force of the testimony as corroboration does not depend entirely on the lapse of time between the commission of the crime and the complaint, but the jury should consider it in connection with surrounding circumstances, such as intimidation by threats, or lack of opportunity; but if the complaint is long delayed, and no reason for the delay is shown, the particulars of the complaint lose all force as corroboration, and are not admissible. As a rule, statements made in answer to questions, or otherwise involuntarily elicited, do not constitute such *complaint* as is admissible under the rules above stated."

State v. Hazlett, 14 N. D. 490, 105 N. W. 617; People v. Wilmot, 139 Cal. 103, 72 Pac. 838; Cunningham v. People, 210 Ill. 410, 71 N. E. 389; State v. Bebb, 125 Iowa, 494, 101 N. W. 189; Parker v. State, 67 Md. 329, 1 Am. St. Rep. 387, 10 Atl. 219; State v. Pollard, 174 Mo. 607, 74 S. W. 969; State v. Peres, 27 Mont. 358, 71 Pac. 162; State v. Dudley, 147 Iowa, 645, 126 N. W. 812; Conger v. State, 63 Tex. Crim. App. 312, 140 S. W. 1112; State v. Burgess, 259 Mo. 383, 168 S. W. 740; 2 Jones, Ev. §§ 347, 348.

It is evident, in the case at bar, the statements were not voluntary nor spontaneous, nor in any manner part of the *res gestæ*. They are, therefore, inadmissible even as corroboration of the girl's testimony.

(2) But more than this, the state frankly concedes that the testimony was not offered solely as corroboration, but for the purpose of fixing the date of the last act of intercourse. In other words, this hearsay testimony was absolutely necessary to their case, and without it the prosecution must fail. It is too plain for argument, that the evidence was wrongly admitted for that purpose. Holding, as we do, that the testimony of the three women mentioned was improperly received, we turn to the consideration of the evidence remaining. This consisted entirely of the testimony of prosecutrix. To rely upon a conviction, the state must maintain both the truthfulness of the girl, and a mental strength to remember and narrate the facts. We have already set out the state's attorney's candid opinion of the girl. He says: "She had the mind of a child of about six, seven, or eight years of age." The trial judge corroborates this view. Her testimony proves it. She admits upon the stand, though but thirteen years of age, to have been morally delinquent for nearly two years. She says: "I was in trouble with the boys before I told the teachers. Two of them I know. A whole lot of them I do not know. I do not know their names. There was a great many of them. Too many to count." Dr. Pray, the state's own witness, testifies as follows: "She could have had sexual intercourse with a grown man without any pain on her part. The parts were large. I was able to insert my three fingers without the least show of pain on her part. The condition I found her in could not be produced by any intercourse on five different occasions. The organs showed repeated intercourse. The parts resembled those usually found on immoral women. They were ballooned, large, and flabby. That

condition is not likely to develop rapidly. It usually takes years, and is due to continued and repeated sexual intercourse." Prosecutrix upon the stand remembered no dates, and the state's attorney was compelled to admit that the same must be supplied by the testimony of the teachers. The prosecutrix testified that she had had only five acts of intercourse with the defendant, and that on four of these occasions she was accompanied by one Esther Hanson; that upon all of such occasions the defendant had sexual intercourse with both herself and Esther Hanson, and upon at least three of these occasions the acts took place in the presence of both girls. That she falsified as to Esther Hanson is conclusively established by the testimony of Dr. Pray, who, as we have already said, was called as a witness upon the part of the state. The doctor says: "I am acquainted with Esther Hanson. I examined her early in November, last year, 1913. The examination was made to the extent of the genital organs. Made at the request of Mrs. M., one of the juvenile officers. The condition of things were just these. I had a reason to expect a certain thing, and was surprised to find that she had unusually small parts, and it is my opinion that she never completed sexual intercourse. That was my judgment at that time, based upon examination." Cross-examination: "I made just as careful an examination as possible. I was not looking for venereal diseases. I do not think it would have been possible to have had sexual intercourse, in the condition I found her vagina, except with a boy. The parts were unusually small. The entrance would barely admit my little finger with some inconvenience. I was long enough in making the examination to satisfy myself. I did not make the examination at the request of the state, only so far as Mrs. M. may represent the state, or yet on your part. It would not be impossible to make penetration. She was very small. It would require force. She had a marginal hymen and it was not ruptured. . . . It was a narrow hymen and did not show evidence of rupture."

Prosecutrix testified that the acts were committed in the front room of a public office building upon one of the main streets in Valley City. She says: "He did not pull down the curtains. It was in the afternoon, about 4 o'clock. Esther was there all the time. The door was unlocked all the afternoon. The public came in and out. He did not say anything to me before he did this. I do not remember that he

talked about it. About 3 o'clock he laid Esther on the floor and did it to her, and after he got through with Esther, he laid me down on the floor and did it to me. Both of us at the same time. That was the first fall I was here, 1913. It was after the snow fell. After the snow was on the way. The grass was still green. Shortly after school started." She further testified: "There was a glass front on the building, and you could see all parts of the room from the sidewalk by looking through the glass. We did this on the side of the safe, work bench, away from the door." In contradiction of this testimony, defendant called the chief of police of Valley City and other witnesses, to testify to the public location of the room in question. The general nature of such testimony is reflected in the following extract from the testimony of the chief of police: "I would say that I go by Mr. Mackey's office about twelve or fifteen times a day. I am familiar with the office and the arrangements of the furniture. You can see from the southwest corner clear to the desk. Looking in from the west window, at the south of the door, you can see into the building nearly all, except the northwest corner; about 2 feet in that corner cannot be seen. You can see under the table, and through where the desk is, on the north side of the room. You can see into the building most easily from 10 o'clock on until sunset." That a man in his sane mind would attempt a crime of this nature in a public place of business, with the door unlocked and the curtains up, facing upon one of the business streets of the city, at 4 o'clock in the afternoon, is absolutely unbelievable. That this man of fifty-six years of age had even the physical ability to have intercourse with the two girls immediately following each other is highly improbable. Taken in connection with the testimony of the doctor, that the other girl had never had intercourse with a man, it places prosecutrix's testimony outside of the pale of belief. No human being should be convicted upon such testimony. Defendant's testimony is to the effect that the prosecutrix, with other children, sometimes frequented his place of business. That he was fond of children, and often gave them small sums of money to buy candy. He says: "The first time I saw her was about a year ago. This little girl and her brother came into the office. She said she was taking dinner to her father, up at the livery barn. Page Persons, now deceased, who officed with me, gave them both some money. She came in quite often in January. Her

little brother was with her most of the time. At last they began to ask me to give them a little money. She was dressed very poorly. The side was out of her shoes, just the same as no shoes at all. They were full of holes. She had no overshoes. . . . I gave her money, because I knew she was hard up, and I wanted to help her. . . . I only tried to help her what she needed." He further testifies that she sometimes delivered washing, that her mother had done for other persons officing near him. He absolutely denies having intercourse with the prosecutrix. The state offered some further testimony, but none of it in any way relating to the commission of the crime. The witness, Henry, testified that he had seen prosecutrix in defendant's place of business. This was not denied by the defendant. Will Bonen, father of the prosecutrix, testified as to her age. Dr. Pray, called by the state, gives the testimony relative to prosecutrix's physical condition, already mentioned. Two other witnesses testified that Esther Hanson's reputation for truth and veracity was poor. This is, we believe, immaterial, in view of the testimony of the doctor, that she was truthful when she denied having had intercourse with the defendant. Davidson, a member of the school board, related a conversation with defendant, but not in any manner showing his guilt.

Many states have statutes forbidding conviction unless the prosecutrix is corroborated; under our laws, the conviction would stand if the testimony of the prosecutrix was entitled to belief. It is, however, so inherently unreasonable, that a conviction should not be allowed to stand. The trial court should have advised the jury to acquit.

(3) It is unnecessary to a decision that other errors be discussed. But in view of the fact that the jury has found the defendant guilty, we might mention a few of those errors which, undoubtedly, had much to do with the conviction. While defendant was upon the stand and had merely denied the offense, he was given a cross-examination which, while skilful, was illegal, and highly prejudicial to his rights. For instance, he was asked about his marriage in 1884, almost thirty years before the offense charged.

We give a sample of the examination:

The first time I was married in Oriska, North Dakota, the second time in Moorhead, Minnesota. The first time I married was in 1884, I think, or 1886. . . .

Q. How long did you live with the woman you claim to have married without a license, the first time? (Objection.)

A. I do not know. Four or five years. Something like that.

Q. But you never finally married the first woman, did you?

A. I did.

Q. Finally married her, too?

A. I do not know whether I married the first woman according to law; did not know I was required to have a license.

Q. You were married in this state?

A. Went to the officer. Had to do what the officer told me.

Q. Do you mean to tell us any officer ever told you, Mr. Mackey, you could not get a license to marry a woman? (Objection.)

Q. Now, did you ever secure a marriage license to marry the first woman?

A. I never did.

Q. You finally left her, did you not, Mr. Mackey?

A. I did not. She left me. We had trouble between us, and we agreed to separate. We got a divorce. I started divorce proceedings here, but I got notice out in Washington that she had got a divorce out there, and I dropped the proceedings here, and let her get the divorce. She married again, and has been married a long time. We got a divorce a great many years ago.

What bearing this testimony had upon the offense for which defendant was tried is not clear to us. The state contends that it was asked to test his credibility as a witness, and cites us to State v. Apley, 25 N. D. 298, 48 L.R.A.(N.S.) 269, 141 N. W. 740. This ruling is not sustained by that case. In fact, it holds the contrary. The rule is stated in a note to said case, in the L.R.A. citation at page 273, where it is said: "The right of cross-examination is not a privilege to turn the searchlight of inquiry upon all the indiscretions of a witness's past life, but it is a right which must be exercised within reasonable limitations, and subject, to some extent, to control under the discretion of the trial judge. The question asked should have some immediate relation to the subject under inquiry, and should be of such a nature as to show whether or not the witness was entitled to be believed. Such evidence is ordinarily called impeachment by cross-examination, and when per-

missible for that purpose, the inquiry should relate to such subjects as would influence the judgment of an unbiased person in determining whether or not the witness is entitled to be believed, and has probably told the truth on the witness stand. When such questions relate to specific acts in the life of a witness, they should be confined to such matters, in point of time, as would produce a reasonable inference from an admission on the part of the witness, that he was not entitled to be believed, or as necessarily impaired his credit." In the case at bar, the witness is held up to scorn before the jury for having failed to obtain a marriage license to marry his first wife, in 1884. When we remember that those questions were asked in apparent ignorance of the fact that the earliest requirement of a marriage license in Dakota is found in chapter 91, Sess. Laws 1890, six years after the marriage of defendant, and that if defendant at the time of his first marriage had searched the entire territory he could have found no officer to give him a license, we see something of the injustice that has been done in this instance. There are other instances which we will not take the time to discuss, which show to our mind that defendant did not have a fair trial. In view of our conclusions above announced, they will not be discussed. Judgment of the trial court is reversed.

Fisk, J.: I think a new trial should be granted for several reasons stated in the opinion, and concur in the result.