(No. 14426.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER FIERETO *et al.* Plaintiffs in Error.

*Opinion filed April 19, 1922—Rehearing denied June 7, 1922.*

1. CRIMINAL LAW—*definition of robbery.* The crime of robbery consists in the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation.

2. SAME—*description and value of the property taken in robbery are not material if it has a value.* The gist of the offense of robbery is the force or intimidation and taking from the person of another, against his will, a thing belonging to him or in his custody, and the property taken need not be accurately described, and its value is immaterial provided it is shown to have a value.

3. SAME—*money taken in a robbery need not be described.* Money taken in a robbery need not be described, as the term itself, without any description, imports value, and it is only in an indictment for larceny or where the degree of the offense depends upon the value that the money taken must be described.

4. SAME—*when stock instruction on circumstantial evidence should not be given.* The stock instruction that "circumstantial evidence is competent legal evidence" and is sufficient to authorize a conviction if the jury are convinced of the truth of the charge, "beyond a reasonable doubt, from facts and circumstances in proof," should not be given where there is no circumstantial evidence; but the error in giving the instruction is not ground for reversal if the direct evidence shows that the defendants are guilty beyond a reasonable doubt.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

W. W. O'BRIEN, (THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Peter Fiereto and Joe Sacrino, plaintiffs in error, were indicted with Joe Siegel and Jack Morgan, otherwise called George Davis, for the crime of robbery with a deadly weapon, alleged to have been committed on January 22, 1921, by making an assault upon Patrick Geoghan and taking from him $3100 lawful money of the United States and two revolvers of the value of $10, all of which were personal goods and property of Mary Hogan in the care, custody and control of Geoghan. Joe Siegel and Jack Morgan, otherwise called George Davis, entered pleas of guilty. The plaintiffs in error were tried, found guilty and sentenced to the penitentiary.

The robbery occurred at about 11:30 in the forenoon of January 22, 1921, in Mary Hogan's place of business, variously called by the witnesses a soft drink parlor or saloon. The witnesses for the People were Thomas Murphy, a bar-tender, Patrick Geoghan, an employee or bar-tender, George Davis, who said he was called Jack Morgan, Joe Siegel and a detective sergeant. All of the witnesses except the detective sergeant were present at the time of the robbery and their testimony was direct and positive to the following facts: There were six men engaged in the commission of the crime, four of whom were indicted and the other two not apprehended. The robbery was planned in Fiereto's saloon, on Orleans street, and all of the men were provided with revolvers. They left Fiereto's saloon and drove around for a while and stopped the car at the south side of the Hogan place, at 201 East Ohio street. One man stayed in the car, another stood outside and four went inside. Murphy, a bar-tender, was behind the bar and they ordered beer, and as he drew it they covered him with revolvers and took his watch and money and rifled the cash register. They returned the watch on the plea of Murphy

that it was a valued keepsake which had belonged to a deceased brother. They demanded that Murphy should open the safe, but he told them he did not have the combination. Geoghan had been sent to the Lake Shore Trust and Savings Bank, where he obtained $3100 of Mrs. Hogan's money for the purpose of cashing workmen's checks on Saturday night. The man who stood outside the saloon came in and said, "Here he comes!" and as Geoghan entered the place Murphy had been backed into a corner and was held up behind the bar. Geoghan was ordered to hold up his hands and they took from him the $3100 and $6 of his money. They ordered him to open the safe, but he told them he did not have the combination, and they said he was only a bar-tender and did not have it. The robbers put Geoghan and Murphy down in the basement and went back to Fiereto's saloon and there divided the money.

The plaintiffs in error denied the commission of the crime. Fiereto testified that he was living on January 22, 1921, at his mother's home and was working every day until twelve or one o'clock at night, and his father testified that Peter worked every night until one o'clock and on the morning of January 22 got up at 11:30. Sacrino testified that his business was driving a laundry wagon; that he was at home at his mother's on January 22 at about 11:30 o'clock in the morning, and his sister testified that on that day he was home the whole day. The plaintiffs in error were proved guilty beyond any reasonable doubt, and the evidence to sustain their defense of an alibi was so indefinite and came from such sources that the jury could not be expected to give it any credit.

It is argued that there was no proof as to the value of the two revolvers mentioned in the indictment or that they were the property of Mrs. Hogan, and that there was no evidence that the money taken was lawful money of the United States. The revolvers were, of course, of some value, but perhaps there was no proof of ownership.

The money taken was variously described by the witnesses. Geoghan said it was $3100 of Mrs. Hogan's money and $6 of his own. Murphy said there was $2700, and Davis said there was $2700 in five and ten-dollar bills, and he thought there was some silver. The crime of robbery consists in the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation. The gist of the offense is the force or intimidation and taking from the person of another, against his will, a thing belonging to him or in his custody. The property taken need not be accurately described, and its value is immaterial as long as it is shown to have a value. Except in an indictment for larceny or where the degree of the offense depends upon value, money need not be described, and the term itself, without any description, imports value. (*People* v. *Clark,* 256 Ill. 14.) It is unbelievable that Geoghan went to the Lake Shore Trust and Savings Bank and drew out $3100 of Mrs. Hogan's money to cash checks when the money had no value. There was also evidence that the robbers took some silver from Geoghan, and that term imports value. The evidence fulfilled the requirements of the law.

The instructions presented to the court, as frequently happens, were of the ready-to-use kind without any adjustment to the facts of the case, and many of them were substantial duplicates. Among those given to the jury was this old acquaintance:

"The jury are instructed as a matter of law that circumstantial evidence is competent legal evidence and if the minds of the jury are convinced of the truth of the charge in the indictment in this case beyond a reasonable doubt from facts and circumstances in proof, this is sufficient to authorize a conviction."

Counsel for plaintiffs in error do not claim that it would be wrong to enlighten a jury with the information that evidence is evidence and enough of it is enough, in a case

where such rules of law are applicable to the evidence, but they protest that the instruction was misleading in this case and should not have been given because there was no circumstantial evidence at all. Their argument is that the instruction would lead the jury to suppose that there were facts and circumstances proved which might authorize a conviction; that the jury would not surmise that the court was merely lecturing on the law of evidence, and the instruction practically excluded the evidence of an alibi. The instruction should not have been given. (*Cunningham* v. *People,* 210 Ill. 410; *Kevern* v. *People,* 224 id. 170.) There may be conditions of the evidence in which the giving of the instruction would necessitate a reversal, but in this case the direct evidence was convincing, and we do not see how the verdict could have been different or that the jurors were, in fact, misled to the detriment of the plaintiffs in error.

The court gave an instruction at the request of the plaintiffs in error fully stating the law relating to the defense of an alibi, advising the jury that such a defense was as proper and legitimate as any other, and if it was sufficient to raise any reasonable doubt as to whether a defendant was at the place at the time of the commission of the crime the verdict should be not guilty. Complaint is made that the court refused to give another instruction concerning that defense, which was substantially like the one given but not as complete. It was not error to refuse to read two instructions of the same character.

Complaint is also made that the court erred in refusing an instruction stating that a confession, to be admissible, must have been freely and voluntarily made and must not have been induced by the remotest fear or injury or the slightest hope of benefit or reward or anything whatever, and that a confession uncorroborated would not justify a conviction. There was no evidence of any confession. The detective sergeant testified that Sacrino said he got $500 out of it, which was an admission of a fact but

not a confession of a crime. If, however, the jury could have regarded it as a confession, the court gave an instruction on that subject of which the refused instruction was a substantial duplicate.

The judgment is affirmed.          *Judgment affirmed.*

---

(No. 14388.—Reversed and remanded.)
MARY JEANETTE McNAMARA *et al.* Appellees, *vs.* JOHN HAMILTON McNAMARA, Appellant.

*Opinion filed April 19, 1922—Rehearing denied June 7, 1922.*